COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NO.  2-07-418-CR

 

 

TONY LANE GREGORY                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








A jury
found Appellant Tony Lane Gregory guilty of capital murder and the trial court
assessed punishment at life imprisonment. 
Appellant contends in four points that the trial court should have
submitted a jury instruction on the lesser included offense of murder, that the
trial court erred by overruling his motion to suppress DNA evidence, and that
the trial court abused its discretion by admitting evidence of an extraneous
suspicious act and permitting a witness to testify about her state of
mind.  We affirm.

II. 
Factual and Procedural Background[2]

Amy Blow
lived at the Cornerstone Apartments in Arlington, Texas.  Amy walked to a convenience store near her
apartment between noon and 2 p.m. on July 4, 2000 B it was
the last time any of her friends saw her alive. 
 

Susan
Shockley lived near Amy in the Cornerstone Apartments.  Appellant also lived nearby in the same
complex.  At about 9:30 or 10:00 p.m. on
July 4, 2000, Appellant removed the screen to a window on Susan=s
enclosed patio, squatted in the dark wearing only boxer-shorts, and told Susan
he wanted to get inside her apartment and needed a place to hide.  Appellant acted very aggressively and refused
to leave until Susan threatened to call the police.  








Connie
Jenkins and Amy were close friends; they talked almost every day.  When Connie was unable to contact Amy for
several days after July 3, 2000, she went to Amy=s
apartment to check on her.  On July 8,
2000, Connie found Amy=s lifeless body on the living
room couch in Amy=s apartment.  Amy was fully-dressed, covered by a quilt,
and positioned on the couch as if she were sleeping.  Amy had been strangled and severely
beaten.  She had two large lacerations on
her vaginal wall that had caused significant bleeding.  There was blood on Amy=s bed,
on the floor from the bedroom to the living room couch where Amy=s body
had been placed, and on the vaginal area of Amy=s
jeans.  The medical examiner opined that
the injuries to Amy=s vagina occurred at or near the
time of her death and that Amy died of manual strangulation more than
twenty-four hours before Connie discovered her body. 

The case
went Acold@ for
several years.  In December 2005,
investigators obtained and executed a search warrant to obtain DNA samples from
Appellant. Investigators discovered that DNA under Amy=s
fingernail was consistent with Appellant=s and
that Appellant=s fingerprints were on a Coors
Lite beer can that had been concealed in a laundry basket beneath bloody towels
in Amy=s
apartment. 

Appellant
became very worried after investigators took the DNA samples from him, and he
confessed to two fellow inmates[3]
that he had severely beaten Amy.  He
asked one inmate to provide an alibi for him and told him Amy=s body
was found with a shopping bag over her face, a detail investigators had not
released to the media.  Appellant told
the other inmate that he did not believe investigators could ever prove he had
sexual intercourse with Amy. 








In June
2006, a grand jury indicted Appellant for capital murder.  The indictment alleged Appellant
intentionally caused Amy=s death by strangling her in the
course of committing or attempting to commit aggravated sexual assault. See
Tex. Penal Code Ann. ' 19.03(a)(2) (Vernon 2003).  Appellant pleaded not guilty, and was tried
in November 2007.  The jury returned a
verdict of guilty, and the trial court sentenced Appellant to life in prison. 

III.  Jury
Instruction Concerning Lesser Included Offense

In his
first point, Appellant argues the trial court erred by failing to give the jury
an instruction on the lesser included offense of murder.  Appellant contends the jury could have
interpreted the medical examiner=s
testimony to mean AAppellant committed the murder
and then, after [Amy] was deceased, inserted an object into her corpse=s
vagina.@ 

A.  Standard of Review








We use a
two-step analysis to determine whether an appellant was entitled to a lesser
included offense instruction.  Hall v.
State, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); Rousseau v. State,
855 S.W.2d 666, 672B73 (Tex. Crim. App.), cert.
denied, 510 U.S. 919 (1993).  First,
the lesser offense must come within article 37.09 of the code of criminal
procedure.  Tex. Code Crim. Proc. Ann.
art. 37.09 (Vernon 2006); Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim.
App. 1998).  AAn
offense is a lesser included offense if . . . it is established by proof of the
same or less than all the facts required to establish the commission of the
offense charged.@ 
Tex. Code Crim. Proc. Ann. art. 37.09(1); see also Hall, 225
S.W.3d at 536. 

Second,
some evidence must exist in the record that would permit a jury to rationally
find that if the appellant is guilty, he is guilty only of the lesser
offense.  Hall, 225 S.W.3d at 536;
Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau,
855 S.W.2d at 672B73.  The evidence must be evaluated in the context
of the entire record.  Moore, 969
S.W.2d at 8.  The court may not consider
whether the evidence is credible, controverted, or in conflict with other
evidence.  Id.  Anything more than a scintilla of evidence
may be sufficient to entitle a defendant to a lesser charge.  Hall, 225 S.W.3d at 536.

B.  Analysis

It is
well-settled that murder is a lesser included offense of capital murder.  Young v. State, 283 S.W.3d 854, 876
(Tex. Crim. App. 2009).  Thus, Appellant
has satisfied the first step of the lesser included offense analysis.  We must therefore determine whether there is
some evidence in the record that would permit a jury to rationally find that if
Appellant is guilty, he is guilty only of murder.  See Hall, 225 S.W.3d at 536.








To
support his contention that the jury could have interpreted Dr. Sisler=s
testimony to mean Appellant murdered Amy and then inserted an object into her
vagina after she was deceased, Appellant points to the following testimony from
Tarrant County Deputy Medical Examiner Dr. Gary Sisler: 

Q.  Based on what you saw at the
autopsy and especially turning your attention to what you discovered in the
vaginal area or the internal vaginal area of Amy Blow, were the lacerations
that were caused in her B caused in her vaginal
wall, do you have an opinion as to whether or not those are fairly
contemporaneous with her death?

 

A.  How are you using the term Acontemporaneous@?  Would you say at or near the time of death,
sir?

 

Q.  At or near, sure.

 

A.  Yeah, I would probably say
perimortal [sic], and we use that term as at or near the time of death. 

 








The
Texas Court of Criminal Appeals addressed a similar factual scenario in Irvan
v. State, No. AP-74853, 2006 WL 1545484 (Tex. Crim. App.) (not designated
for publication), cert. denied, 549 U.S. 1079 (2006).  Irvan was indicted for murdering the victim
in the course of aggravated sexual assault and argued the evidence supported an
instruction on the lesser included offense of murder because the medical
examiner could not definitively state whether the sexual assault occurred
before or after the murder.  Id.
at *1, *10B11.  Specifically, the medical examiner testified
at Irvan=s trial
that he could not say whether the sexual assault occurred before the murder, at
the time of the murder, or after the murder. 
Id. at *11.  Rejecting
Irvan=s
argument, the court stated:  AThe jury
could not rationally acquit Irvan of capital murder and convict him only of
murder merely because the medical examiner could not pinpoint the exact timing
of the sexual assault.@ 
Id.  The court then
discussed other evidence showing the murder occurred during the course of the
sexual assault and held Irvan Afailed
to satisfy the second requirement of the test.@  Id. 









Appellant
has similarly failed to satisfy the second step of the lesser included offense
analysis.  First, Dr. Sisler=s
testimony that Amy=s vaginal lacerations were
caused at or near the time of death is not evidence that her rape and murder
were actually disconnected in time.  See
Segundo v. State, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008), cert. denied,
130 S. Ct. 53 (2009) (holding medical examiner=s
testimony that sperm could remain in a woman=s
vaginal vault for up to seventy-two hours was no evidence that the victim=s rape
and murder were, in fact, disconnected); see also Irvan, 2006 WL
1545484, at *11 (rejecting lesser included murder instruction based solely on
medical examiner=s inability to determine exact
timing of sexual assault).  Appellant
points to no evidence supporting his suggestion that Amy=s
vaginal injuries occurred after she died. 
A[I]t is
not enough that the jury may disbelieve crucial evidence pertaining to the
greater offense, but rather, there must be some evidence directly germane to
the lesser‑included offense for the finder of fact to consider before an
instruction on a lesser‑included offense is warranted.@  Hampton v. State, 109 S.W.3d 437, 441
(Tex. Crim. App. 2003) (citing Skinner v. State, 956 S.W.2d 532, 543
(Tex. Crim. App. 1997), cert. denied, 523 U.S. 1079 (1998)).  Dr. Sisler=s
testimony did not, without more, entitle Appellant to a jury instruction on the
lesser included offense of murder, and we find no evidence in the record
supporting Appellant=s contention that he is guilty
only of murder.

Moreover,
there is ample evidence that Appellant murdered Amy in the course of sexually
assaulting her.  Amy suffered two
lacerations on her vaginal wall, and there was concentrated blood on Amy=s bed,
drops of blood leading from the bedroom to the living room couch, vomit on the
floor behind the couch, vomit on the bottom of Amy=s feet,
and a pool of blood on the vaginal area of Amy=s
jeans.  Amy=s body
was found on the couch, positioned as if she were sleeping.  This evidence showed that Amy was most likely
sexually assaulted in the bedroom, walked or forced to walk from the bedroom to
the living room (because of the blood on the floor and the vomit on the bottom
of her feet), and then placed in a sleeping position on the couch.  Appellant has failed to show there is some
evidence in the record that would permit a jury to rationally find Appellant
guilty only of the lesser included offense of murder.  See Segundo, 270 S.W.3d at 91; Irvan,
2006 WL 1545484, at *11.  

We
overrule Appellant=s first point.








IV.  Motion
to Suppress DNA Samples

Appellant
next contends the trial court erred by denying his motion to suppress DNA
samples seized from him pursuant to a 2003 search warrant. Specifically,
Appellant contends that the December 2005 search warrant affidavit in this case[4]
was based on a May 2003 search warrant from an unrelated case[5]
and that the 2003 search warrant was not based on probable cause.  According to Appellant, because the 2005
search warrant affidavit was based on the invalid 2003 search warrant, the
buccal swabs taken from Appellant in December 2005 are fruit of the illegal
2003 search and seizure. The State counters that the 2005 search warrant
affidavit, standing alone, establishes probable cause. 

A.  Applicable Law








A search
warrant shall not issue in Texas unless sufficient facts are presented through
a sworn affidavit to satisfy the issuing magistrate that probable cause exists
for its issuance.  Tex. Code  Crim. Proc. Ann. art. 18.01(b) (Vernon Supp.
2009); Jones v. State, 833 S.W.2d 118, 123B24 (Tex.
Crim. App. 1992).  The facts must
illustrate (1) that a specific offense has been committed, (2) that the
specifically described property or items that are to be searched for or seized
constitute evidence of that offense or evidence that a particular person
committed that offense, and (3) that the property or items constituting evidence
to be searched for or seized are located at or on the particular person, place,
or thing to be searched.  Tex. Code Crim.
Proc. Ann. art. 18.01(c).  Whether the
facts mentioned in an affidavit are adequate to establish probable cause
depends on the Atotality of circumstances.@  Ramos v. State, 934 S.W.2d 358, 362B63 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1198 (1997).  

In
assessing the sufficiency of an affidavit for an arrest or a search warrant, we
are limited to the four corners of the affidavit.  Hankins v. State, 132 S.W.3d 380, 388
(Tex. Crim. App.), cert. denied, 543 U.S. 944 (2004); Jones, 833
S.W.2d at 123.  We must interpret the
affidavit in a common sense and realistic manner, recognizing that the
magistrate was permitted to draw reasonable inferences.  Davis v. State, 202 S.W.3d 149, 154
(Tex. Crim. App. 2006); Hankins, 132 S.W.3d at 388.  If the magistrate had a substantial basis for
concluding that a search would uncover evidence of wrongdoing, the Fourth
Amendment requires no more, and the affidavit should be deemed sufficient.  Illinois v. Gates, 462 U.S. 213, 236,
103 S. Ct. 2317, 2331 (1983). 

B.  Analysis








Appellant
contends the DNA samples taken from him in 2005 should have been suppressed
because the 2005 search warrant affidavit was based on a 2003 search warrant
that lacked probable cause.  However, we
need not decide whether the 2003 search warrant was based on probable cause
because excluding all references to the 2003 search warrant or evidence
obtained pursuant to the 2003 search warrant, the 2005 search warrant affidavit
sets forth sufficient facts to establish probable cause.  See Pool v. State, 157 S.W.3d 36, 44
(Tex. App.CWaco 2004, no pet.) (holding
some of the evidence in the search warrant affidavit was illegally obtained but
that the court Amust put aside the illegally
obtained evidence from the affidavit and evaluate the affidavit for probable
cause using the remaining lawfully-acquired evidence@).













Independent
of any references to or evidence obtained pursuant to the 2003 search warrant,[6]
the affidavit supporting the 2005 search warrant established: (1) Connie
Jenkins and Samuel Cooper found Amy=s body
inside Amy=s apartment on July 8, 2000; (2)
the autopsy revealed Amy had been beaten, raped, and died from Amanual
strangulation;@ (3) Amy had been deceased for
several days; (4) foreign male DNA was obtained from Amy=s
fingernail clippings, and the presence of foreign DNA was consistent with her
severe beating and sexual assault; (5) the foreign male DNA matched Appellant=s DNA
from aggravated sexual assault case #01121548 (not the 2003 search warrant
case) where Appellant threatened the victim with a knife and sexually assaulted
her anally with his penis; (6) Appellant=s
previous arrests included kidnapping, burglary, and larceny, among others; (7)
Appellant and Amy lived in the same apartment complex; (8) Appellant was not
incarcerated at the time of Amy=s
murder; (9) Appellant=s ex-girlfriend, who lived with
him at the time of Amy=s murder, said that Appellant
had been drinking alcohol heavily, using prescription pain relievers, and
running up large phone-sex bills near the time of Amy=s murder
and that Appellant would often disappear for several hours in the middle of the
night without explanation; (10) Susan Shockley, who also lived in the same
apartment complex, said that Appellant left a note on her door a month before
Amy=s murder
indicating he had a romantic interest in Susan, that Appellant started knocking
on Susan=s door
every day, and that she felt Appellant was stalking her; (11) Appellant climbed
onto Susan=s apartment patio the night of
July 4, 2000, knocked on her bedroom window, crouched down on the patio to hide
behind the fence, appeared very nervous and paranoid, said he needed a place to
hide, and refused to leave until she threatened to call the police; (12)
Appellant had buccal samples on his person; and (13) Appellant was incarcerated
at the time of the affidavit at the Allred prison unit in Wichita County,
Texas. 








Considering
the totality of the circumstances, and excluding any references to or evidence
obtained pursuant to the 2003 search warrant, we hold that the magistrate had a
substantial basis for concluding that probable cause existed to support the
issuance of the December 2005 search warrant for collection of buccal swabs.  See Gates, 462 U.S. at 238, 103 S. Ct. at
2332.  The facts in the 2005 search
warrant affidavit illustrate that Amy was sexually assaulted and murdered, that
Appellant=s DNA constituted evidence that
Appellant did or did not sexually assault and murder Amy, and that Appellant=s DNA
could be found on Appellant=s person
at a particular place.  See Tex.
Code Crim. Proc. Ann. art. 18.01(c); see also Vafaiyan v. State, 279
S.W.3d 374, 384 (Tex. App.CFort
Worth 2008, pet. ref=d) (holding that when considered
together with the other evidence described within the four corners of the
affidavits, the totality of the circumstances provided the magistrate with a
substantial basis for concluding probable cause existed to search); Goodrum
v. State, No. 01‑01‑00950‑CR, 2003 WL 1995634, at *5
(Tex. App.CHouston [1st Dist.] May 1, 2003,
pet. ref=d) (mem.
op., not designated for publication) (concluding that, under the totality of
the circumstances, the magistrate had sufficient evidence linking appellant to
the crime to issue a search warrant allowing police to draw his blood to
further their investigation). 
Accordingly, we hold that the trial court did not abuse its discretion
by denying Appellant=s motion to suppress.  See Cantu v. State, No. 05‑07‑01625‑CR,
2009 WL 1479412, at *2 (Tex. App.CDallas
May 28, 2009, no pet.) (not designated for publication) (holding trial court
did not err by denying appellant=s motion
to suppress after appellate court reviewed the affidavit as a whole and
concluded that affidavit authorized magistrate=s
issuance of search warrant for collection of buccal swabs).  

We
overrule Appellant=s second point.

V.  Admission of Evidence

Appellant=s third
and fourth points concern the trial court=s
admission of certain testimony by Susan Shockley.  Appellant=s third
point complains about Susan=s
description of what Appellant deems an extraneous suspicious act, and Appellant=s fourth
point concerns the admission of Susan=s
testimony about her state of mind.  After
conducting a hearing outside the presence of the jury, the trial court allowed
Susan to testify about Appellant=s
suspicious conduct the night of July 4, 2000. 
The trial court also permitted Susan to testify that she was upset and
frightened by a note Appellant left on her door approximately one month before
Amy=s death.









A.  Standard of Review

We
review a trial court=s decision to admit or exclude
evidence under an abuse of discretion standard. 
Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). The
test for abuse of discretion is whether the court acted without reference to
any guiding rules or principles, and the mere fact that a trial court may
decide a matter within its discretionary authority differently than an
appellate court does not demonstrate abuse.  Montgomery v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990). The appellate court will not reverse a trial court's
ruling on the admission of evidence as long as the ruling is within the zone of
reasonable disagreement.  Id. at
391 (op. on reh'g).

B.  Appellant=s
Suspicious Act on July 4, 2000

Susan
testified that at about 9:30 or 10:00 the night of July 4, 2000, Appellant
removed a windowscreen on her enclosed patio, squatted in the dark wearing only
boxer-shorts, and told her he wanted to get inside her apartment and needed a
place to hide.  Susan said that Appellant=s
demeanor was Avery aggressive,@ that he
remained in a squatting position the entire time he was on her porch, and that
he finally left after she threatened to call the police. Appellant objected to
Susan=s
testimony as irrelevant and unduly prejudicial. The trial court overruled
Appellant=s objections and found the
probative value of Susan=s testimony outweighed the
prejudicial effect. 








1.  Rule of Evidence 404(b)

Appellant
first argues Susan=s testimony was inadmissible
because it relates to an extraneous act rendered inadmissible by rule of
evidence 404(b). See Tex. R. Evid. 404(b).  In response, the State contends the trial
court did not abuse its discretion by admitting Susan=s
testimony because her testimony was relevant to the timing of Amy=s death,
Appellant=s identity, and Appellant=s
consciousness of guilt.  We agree with
the State.








AEvidence
of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.@  Tex. R. Evid. 404(b).  However, this evidence may be admissible when
it is relevant to a Anoncharacter conformity fact of
consequence in the case,@ such as intent, motive,
identity, opportunity, preparation, plan, knowledge, or absence of mistake or
accident.  Powell v. State, 63
S.W.3d 435, 438 (Tex. Crim. App. 2001); see Tex. R. Evid. 404(b).  Further, evidence of flight is Aadmissible
as a circumstance from which an inference of guilt may be drawn.@  Alba v. State, 905 S.W.2d 581, 586
(Tex. Crim. App. 1995), cert. denied, 516 U.S. 1077 (1996).  Susan=s
testimony tended to prove Appellant was in the vicinity of Amy=s
apartment and was looking for a place to hide near the time of Amy=s
murder.  See Sosa v. State, 177
S.W.3d 227, 230 (Tex. App.CHouston
[1st Dist.] 2005, no pet.) (recognizing that neither an accused=s
presence at, nor flight from, the scene of a crime is sufficient alone to
support a guilty verdict, but that both are circumstances from which an
inference of guilt may be drawn).  Her
testimony was also probative of Appellant=s
identity.[7]  See Rodriguez v. State, No.
05-02-01272-CR, 2003 WL 22966671, at *6 (Tex. App.CDallas
Dec. 18, 2003, pet. ref=d) (mem. op., not designated for
publication) (op. on reh=g) (holding trial court did not
err by admitting evidence of extraneous aggravated robbery during defendant=s flight
from murder because evidence was relevant to identity).  Because Susan=s
testimony was relevant apart from Appellant=s
conformity with character, the trial court did not err in finding the testimony
admissible under rule 404(b).  See
Tex. R. Evid. 404(b); Alba, 905 S.W.2d at 586. 

2.  Rule of Evidence 403








Appellant also
objected to Susan=s testimony under rule of evidence
403.  Evidence that is relevant may
nevertheless be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, misleading the jury,
or needless presentation of cumulative evidence.  Tex. R.
Evid. 403.  Only Aunfair@ prejudice
provides the basis for exclusion of relevant evidence.  Montgomery, 810 S.W.2d at 389.  Unfair prejudice arises from evidence that
has an undue tendency to suggest that a decision be made on an improper basis,
commonly an emotional one.  Id.  

When a defendant
makes a rule 403 objection, the trial court has a nondiscretionary obligation
to weigh the probative value of the evidence against the unfair prejudice of
its admission.  Id.  In overruling such an objection, the
trial court is assumed to have applied a rule 403 balancing test and determined
the evidence was admissible.  See
Poole v. State, 974 S.W.2d 892, 897 (Tex. App.CAustin 1998, pet.
ref=d); Yates v.
State, 941 S.W.2d 357, 367 (Tex. App.CWaco 1997, pet.
ref=d); Caballero
v. State, 919 S.W.2d 919, 922 (Tex. App.CHouston [14th
Dist.] 1996, pet. ref=d). 
A reviewing court must recognize that the trial court is in a superior
position to gauge the impact of the relevant evidence and not reverse a trial
court=s ruling if it is
within the Azone of reasonable disagreement.@  Mozon v. State, 991 S.W.2d 841, 847
(Tex. Crim. App. 1999); Montgomery, 810 S.W.2d at 391. 








In
considering whether the trial court should have excluded Susan=s
testimony under rule 403, we measure the trial court=s
balancing-test determination against the following criteria: (1) how
compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probableCa factor which is
related to the strength of the evidence presented by the proponent to show the
defendant in fact committed the extraneous offense; (2) the potential the other
offense evidence has to impress the jury Ain some irrational
but nevertheless indelible way@; (3) the time the
proponent will need to develop the evidence, during which the jury will be
distracted from consideration of the indicted offense; and (4) the force of the
proponent=s need for this evidence to prove a fact
of consequence, that is, does the proponent have other probative evidence
available to him to help establish this fact, and is this fact related to an
issue in dispute.  Mozon, 991
S.W.2d at 847.  When the relevant
criteria objectively lead to the conclusion that the danger of unfair prejudice
substantially outweighs the probative value of the proffered evidence, the
appellate court should declare that the trial court erred by failing to exclude
it.  Curtis v. State, 89 S.W.3d
163, 170 (Tex. App.CFort Worth 2002, pet. ref=d) (citing Montgomery,
810 S.W.2d at 392).








In this
case, each of the four factors favors admissibility.  First, Susan=s
testimony makes it more likely that Appellant murdered Amy the evening of July
4, 2000.  The medical examiner testified
Amy died at least twenty-four hours before her body was discovered on July 8,
2000, and that she could have died within a wide range of time before
then.  Further, investigators testified
there was a great deal of blood throughout Amy=s
apartment. Appellant=s presence, demeanor, and
behavior on Susan=s enclosed patio the evening of
July 4, 2000, wearing only boxer-shorts and looking for a place to hide are
compellingly probative of his involvement in Amy=s
murder, particularly because the identity of Amy=s killer
was disputed at trial.  The evidence
helped explain the possibility that Appellant killed Amy, discarded his bloody
clothes, and looked for a place to hide in Susan=s
apartment.

In
addition, Susan=s testimony concerning Appellant=s act of
accessing her enclosed patio is not particularly emotional or otherwise likely
to inflame the jury.  And her testimony
did not detract from the jury=s
consideration of the indicted offense because the State offered her testimony
as part of its proof that Appellant committed the indicted offense.  Finally, Susan was the only witness to
Appellant=s act, and it does not appear
the State had ready-access to other evidence to show Appellant=s
behavior and presence near the time of the murder.  The trial court did not abuse its discretion
by finding the probative value of Susan=s
testimony was not substantially outweighed by any prejudicial effect.   

We
overrule Appellant=s third point. 

C.  Susan=s State
of Mind Testimony








Susan
also testified she first became aware of Appellant after he left a note on her
door in early June 2000.  She said that
after reading the note, she was upset because the note frightened her.  Appellant asserted a general relevance
objection to the question that asked Susan what she Agather[ed]
from the note after [she] read it,@ and the
State argued the testimony concerned Susan=s state
of mind.  The trial court overruled
Appellant=s objection. Assuming without
deciding the trial court erred by overruling Appellant=s
objection to Susan=s state of mind testimony, the
error, if any, was harmless.

 
     Appellant concedes that the
admission of Susan=s testimony does not involve
constitutional error.  Rule of appellate
procedure 44.2(b) therefore applies.  See
Tex. R. App. P. 44.2(b).  Under rule
44.2(b), we must disregard the error if it did not affect Appellant=s
substantial rights.  Id.; see
Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639,
642B43 (Tex.
App.CFort
Worth 1998, pet. ref=d).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643.  Conversely, an error does not
affect a substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Solomon v. State, 49 S.W.3d 356, 365
(Tex. Crim. App. 2001); Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998).  








Under
the circumstances, we have fair assurance that the admission of Susan=s
testimony that she was upset because the note frightened her did not influence
the jury or had but a slight effect.  In
addition to Susan=s state of mind testimony, the
State presented evidence that Appellant watched Amy and Susan from the bushes
at the pool; that Amy did not want to converse with Appellant at the apartment
pool; that Amy was last seen alive the afternoon of July 4, 2000; that around
9:30 or 10:00 p.m. on July 4, 2000, Appellant squatted on Susan=s patio
in the dark wearing only boxer-shorts and told Susan he wanted to get inside
her apartment and needed a place to hide; that Appellant=s
fingerprints were on a Coors Lite beer can that was concealed beneath bloody
towels in a laundry hamper inside Amy=s
apartment; that the mixture of DNA under Amy=s
fingernail was consistent with Amy=s and
Appellant=s; that Appellant became very
worried after detectives took a DNA sample from him; that Appellant asked a
fellow inmate to provide an alibi for him; that Appellant told fellow inmates
Amy scratched him on his nose, he severely beat Amy, he did not believe
investigators could ever prove he had sexual intercourse with Amy, and Amy=s body
was found with a shopping bag over her head, a detail the investigators did not
release to the media. 








Susan=s state
of mind testimony was insignificant in the context of the entire case against
Appellant.  We do not see how its
admission in evidence substantially or injuriously affected or influenced the
jury in reaching its verdict.  We
therefore hold that the trial court=s error,
if any, in admitting Susan=s
testimony was harmless.  See Tex.
R. App. P. 44.2(b).  

We
overrule Appellant=s fourth point.

VI. 
Conclusion

Having
overruled each of Appellant=s four
points, we affirm the trial court=s judgment.        

 

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  GARDNER, WALKER, and
MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 28, 2010











[1]See Tex. R. App. P. 47.4.





[2]Because Appellant does
not contest the sufficiency of the evidence to support his conviction, we set
out only so much of the evidence as required to address Appellant=s points.





[3]Appellant was
incarcerated in December 2005 for an unrelated offense.





[4]Search Warrant # 14536
was issued December 20, 2005, and authorized seizure of buccal swabs from
Appellant for use in the present case.





[5]Search Warrant # 11075
was issued May 13, 2003, and authorized seizure of buccal swabs from Appellant
for use in an unrelated sexual assault case.





[6]We exclude the following
facts from our analysis of the 2005 search warrant affidavit: the DNA under Amy=s fingernail matched
Appellant=s DNA; Appellant=s DNA was taken pursuant
to a search warrant in 2003 in sexual assault case #01300576; Appellant
threatened the victim in case #01300576 with a handgun, beat her with the butt
of the handgun, causing multiple contusions and lacerations, and sexually
assaulted her anally with his penis and the barrel of the gun; and Appellant
was convicted and sentenced to forty years= confinement in case #01300576.





[7]Appellant=s identity was clearly at
issue at trial.  For example, Appellant=s counsel extensively
cross-examined an investigating detective concerning the investigator=s efforts to rule out
suspects other than Appellant.