**Bernave SOSA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–04–00074–CR, 01–04–00075–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 24, 2005.

Floyd W. Freed, III, Houston, for Appellant.

Eric Kugler, Asst. Dist. Atty. of Harris County, Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BLAND.

## OPINION

JANE BLAND, Justice.

In cause number 934032, appellant, Bernave Sosa, pleaded not guilty to the aggravated robbery of Darlene Galvan. The trial court found him guilty and sentenced him to 40 years' confinement. In cause number 934033, Sosa pleaded not guilty to the aggravated assault of Adriana Galvan. The trial court found him guilty and sentenced him to 20 years' confinement. We hold that the evidence is legally and factually sufficient to support the convictions. We therefore affirm.

### Facts

Darlene Galvan lived at 1002 Avenue B with her boyfriend, Glen Ellis, and her daughters, Janelle (age 14), Vanessa (age 12), and Adriana (age 8). One afternoon in December 2002, two men broke into Darlene's home. Both suspects wore black ski masks and carried guns. One intruder was heavyset and wore a blue sweat shirt and jeans. The other intruder, later identified as Sosa, was smaller and wore a white T-shirt and jeans.

Darlene, her three daughters, and her daughter's friend were home during the break-in. Ellis was not home. From her bedroom, Darlene heard Adriana run down the hallway, screaming, "Mommy, mommy, help me." Janelle testified that she saw one of the intruders chase Adriana with a gun. Janelle was not certain, but she thought the man in the dark sweat shirt was the one who chased Adriana.

When Darlene opened her bedroom door, Sosa pointed a gun to her head. Sosa then grabbed Darlene and threw her onto the floor in Janelle's bedroom, where Adriana, Janelle, and her friend lay on the floor screaming. The two gunmen demanded money, and Darlene replied, "Please don't kill my kids." Both gunmen

walked in and out of Janelle's room; however, the man in the blue shirt remained in the bedroom for most of the time. Darlene testified that the man who remained in the bedroom pointed the gun at Darlene and the girls, demanding them to sit still. One of the men grabbed Darlene's small safe from her bedroom and threw it on top of Darlene.[1]

From a different area of the house, Vanessa saw the man in the white T-shirt holding a gun at her mother's head. Vanessa was afraid and ran out of the house. She saw a Suburban parked in the driveway. When the driver noticed Vanessa, he honked his horn and drove away. Vanessa ran to the neighbor's house, and the neighbor called the police.

Officers Michael Amador and Mark Mills responded to the call. Officer Amador entered the home and pursued the two masked men, who ran into Darlene's bedroom, shut the door, and broke a window in an attempt to escape. Officer Amador saw Sosa climbing out through the window. Officer Amador stayed inside to protect the victims. Officer Mills ran outside and followed Sosa as he ran through the adjacent back yard, into a nearby alleyway, and into a breezeway between two businesses. Remaining in constant radio communication with the other officers, Officer Mills chased Sosa. Officer Mills lost sight of Sosa for "a matter of seconds" as he rounded the corners; however, no other people were outside during the chase. Detective Chance, who had been monitoring the chase via his car radio, drove to the scene and apprehended Sosa.

The officers arrested Sosa and drove him back to Darlene's house. Darlene and Officer Amador identified Sosa based on his clothing, height, and build. Janelle identified Sosa based on his clothing. The

intruders had ransacked Darlene's bedroom and had taken Ellis's gun. The officers recovered the ski masks, weapons, and bullets, none of which contained evidence as to the identity of the intruders.

## Standards of Review

In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004). In a factual sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Id.* (citing *Zuniga v. State*, 144 S.W.3d 477, 483 (Tex.Crim.App. 2004)). Although our analysis considers all the evidence presented at trial, the trier of fact is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim.App.1986). We may not substitute our own judgment for that of the fact finder. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex.Crim.App.2000).

## Sufficiency of the Evidence

A person commits aggravated robbery if he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death, in the course of committing theft, with intent to obtain or to maintain control of the property, and uses or exhibits a deadly weapon (here, a firearm). *See* TEX. PEN.CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 2003). A person commits aggravated assault if he intentionally

1. The record is unclear as to which man threw the safe.

or knowingly threatens another with imminent bodily injury, and uses or exhibits a deadly weapon during the commission of the assault. TEX. PEN.CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2004–2005).

*Identity*

 With regard to the aggravated robbery and aggravated assault convictions, Sosa contends that the evidence is legally and factually insufficient to establish his identity because the witnesses did not describe his facial appearance. Rather, the witnesses identified him based upon his clothing, height, and build. Identification based upon an individual's build, when corroborated with additional evidence, can be legally sufficient. *See Hutchinson v. State*, 42 S.W.3d 336, 342–43 (Tex.App.-Texarkana 2001), *aff'd* 86 S.W.3d 636 (Tex. Crim.App.2002) (holding that evidence sufficient based upon testimony of defendant's build, gait, and hat); *Lunn v. State*, 753 S.W.2d 492, 495–96 (Tex.App.-Beaumont 1988, no pet.) (holding that evidence sufficient based upon victim's recognition of defendant's eyes, voice, and words used during assault).

Darlene described Sosa as a smaller man, wearing a white T-shirt and jeans. When the police arrived at Darlene's house after arresting Sosa, Darlene identified Sosa as the same man who had pointed a gun at her in her hallway. She recognized Sosa based upon his clothing, the way his clothing fit, his height, build, and the "way he looked." Janelle identified Sosa based on his clothing. She testified that Sosa's white T-shirt was torn "like somebody was pulling him," and he had facial cuts from the broken glass. Officer Amador identified Sosa as the intruder he had seen inside Darlene's home based upon his clothing, height, and build.

 Moreover, Sosa fled from the scene of a home invasion. The mere presence of an accused at the scene of an offense is not alone sufficient to support a conviction; however, it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex.Crim.App. 1979). While flight alone will not support a guilty verdict, evidence of flight from a crime scene is a circumstance from which an inference of guilt may be drawn. *Id.* Officer Mills chased Sosa from the adjacent backyard to the point of arrest. Officer Mills lost sight of Sosa for mere seconds as he rounded the corners; however, no other people were outside during the chase. Officer Mills identified Sosa based on his clothing and build.

Thus, the witnesses identified Sosa based upon more than his build. They also identified his clothing and height. *See Hutchinson*, 42 S.W.3d at 342, *aff'd* 86 S.W.3d 636. Additionally, Sosa's presence at the scene and flight therefrom are circumstances tending to prove guilt. *See Valdez*, 623 S.W.2d at 321. Sosa's contention that the identification is unreliable because the intruder wore a mask goes to the witnesses' credibility. *See Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App. 1999) (stating that trier of fact is sole judge of credibility of eyewitnesses and strength of evidence).

Viewing all of the evidence in the light most favorable to the verdict, a rational trier of fact could have established Sosa's identity beyond a reasonable doubt with regard to the aggravated robbery and aggravated assault convictions. *See Escamilla*, 143 S.W.3d at 817. We thus hold that the evidence is legally sufficient. Sosa's factual sufficiency complaint reasserts the same claims as those in his legal sufficiency complaint. Sosa did not testify at trial and the State's evidence is not inherently weak. Viewing all of the evidence in a

neutral light, the evidence is not so weak that the verdict is clearly wrong and manifestly unjust; therefore, we hold that the evidence is factually sufficient. *See id.*

*Imminent Bodily Injury*

■ With regard to the aggravated assault conviction, Sosa contends that the evidence is legally and factually insufficient to establish that he threatened Adriana with imminent bodily injury because Adriana did not testify. Janelle testified that, although she was not certain, she thought the other intruder—the man in the dark sweat shirt—chased Adriana while pointing his gun at her. Darlene testified that the other intruder pointed a gun at Darlene, Adriana, and the other girls, demanding them to sit still.[2] Darlene and Janelle testified that Sosa demanded money while he walked in and out of the bedroom, where Darlene, Adriana, and the other girls remained on the floor.

■ "The display of a deadly weapon of and within itself constitutes a threat of the required imminent harm." *Robinson v. State,* 596 S.W.2d 130, 133 n. 7 (Tex.Crim. App.1980) (holding that omission of "imminent" from jury instruction on element of placing another in fear of imminent bodily injury or death was not error); *cf. Peterson v. State,* 574 S.W.2d 90, 92 (Tex.Crim. App.1978) (holding that, "implicit in the allegation that a 'Deadly Weapon' was used to threaten the complainant is the possibility that the complainant was threatened with death as well as bodily injury"). The evidence in this case establishes that the other intruder, not Sosa, "pointed" a gun at Adriana. Darlene and Janelle testified, however, that Sosa held a gun in his hands, demanded money, and walked in and out of the bedroom where Adriana remained on the floor. Sosa's display of a deadly weapon while demanding money constitutes a threat of the required imminent harm. *See Robinson,* 596 S.W.2d at 133 n. 7.

■ Moreover, under the law of parties—which the trial court, as fact-finder, could consider—a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 2003). The evidence establishes that the other intruder pointed his gun and chased Adriana. Under the law of parties, Sosa is criminally responsible for the aggravated assault because Sosa, acting with intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid the other person to commit the offense. *See Johnson v. State,* 6 S.W.3d 709, 711 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (holding sufficient evidence of aggravated robbery under law of parties because defendant performed reconnaissance of robbery location and drove getaway car, but was not present at robbery when gun was displayed); *see also Escobar v. State,* 28 S.W.3d 767, 774 (Tex. App.-Corpus Christi 2000, pet. ref'd) (holding sufficient evidence of aggravated robbery under law of parties because defendant entered getaway vehicle with stolen merchandise while third party pointed gun at victim); *Brewer v. State,* 852 S.W.2d

2. The State's brief asserts that Sosa pointed the gun at "everyone in the room at one point or another," demanding them to sit still. In contrast, the record indicates that the other intruder pointed the gun at everyone in the room. Specifically, Darlene testified that the man in the blue shirt "pretty much stayed in Janelle's bedroom," while Sosa was "in the master bedroom more." Darlene further testified that the man in Janelle's bedroom pointed the gun at her and the girls, and he demanded that they sit still.

643, 647 (Tex.App.-Dallas 1993, pet. ref'd) (holding sufficient evidence of aggravated robbery under law of parties because defendant dropped off and picked up accomplice who committed armed robbery).

Viewing all of the evidence in the light most favorable to the verdict, a rational trier of fact could have established beyond a reasonable doubt that Sosa threatened Adriana with imminent bodily injury. *See Escamilla*, 143 S.W.3d at 817. We thus hold that the evidence is legally sufficient. Here, Sosa's factual sufficiency complaint reasserts the same claims as those in his legal sufficiency complaint. Sosa did not testify at trial and the State's evidence is not inherently weak. Viewing all of the evidence in a neutral light, the evidence is not so weak that the verdict is clearly wrong and manifestly unjust; therefore, we hold that the evidence is factually sufficient. *See id.*

### Conclusion

We hold that the evidence is legally and factually sufficient to support the convictions. We therefore affirm the judgments of the trial court.