*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

**MEMORANDUM OPINION**

No. 04-08-00167-CR

Robert **COOPER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-7870B
Honorable Sharon MacRae, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:      Karen Angelini, Justice
           Rebecca Simmons, Justice
           Steven C. Hilbig, Justice

Delivered and Filed:   October 22, 2008

AFFIRMED

     Robert Cooper was charged by indictment with aggravated robbery. Cooper pled not guilty; however, following a jury trial, he was found guilty of aggravated robbery. Cooper then pled true to the enhancement allegations in the indictment and was sentenced to twenty-nine years imprisonment. In one issue on appeal, Cooper contends the evidence is factually insufficient to support the jury's finding that he committed aggravated robbery. We affirm.

## STANDARD OF REVIEW

The Texas Court of Criminal Appeals has recently set forth the standard on factual sufficiency of the evidence in detail in *Lancon v. State*, 253 S.W.3d 699 (Tex. Crim. App. 2008):

> There are three basic ground rules that guide a court of appeals in conducting a factual-sufficiency analysis. First, the court of appeals must be cognizant of the fact that a jury has already passed on the facts and must give due deference to the determinations of the jury. While the court of appeals may disagree with the factfinder, it should afford the appropriate deference in order to avoid substituting its judgment for that of the jury. Second, the court of appeals' opinion should clearly lay out and explain how the evidence supporting the verdict is too weak on its own, or state how the contradicting evidence greatly outweighs evidence in support of the verdict. This is particularly important because it assists this Court in determining whether the court of appeals applied the standard of review properly. Third, the appellate court should review all of the evidence in a neutral light, as opposed to a legal-sufficiency review in which the evidence is viewed in the light most favorable to the verdict. A verdict should be set aside only if the evidence supporting the verdict is so weak as to render the verdict clearly wrong or manifestly unjust.

*Lancon*, 253 S.W.3d at 704-05 (citations omitted). The court in *Lancon* then continued its discussion, setting forth the two ways in which the evidence may be insufficient: (1) the evidence supporting the verdict, though legally sufficient, is nonetheless too weak to support it; and (2) when considering conflicting evidence, the jury's verdict is against the great weight and preponderance of the evidence. *Id.* at 705.

Here, Cooper was charged with aggravated robbery. A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2003). A person commits aggravated robbery if he commits robbery, and he uses or exhibits a deadly weapon. *Id.* § 29.03(a)(2). Further, when a robbery is committed by threats of bodily injury or by placing another in fear, that fear must be such that in reason and common experience will be likely to induce a reasonable person to part with his property

against his will. *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989). And, displaying a deadly weapon in and of itself constitutes a threat of the required imminent harm. *Robinson v. State*, 596 S.W.2d 130, 133 n.7 (Tex. Crim. App. 1980); *Sosa v. State*, 177 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Here, Cooper argues that there was factually insufficient evidence to support the jury's finding that he threatened Hernandez or placed Hernandez in fear of imminent bodily injury or death.

## THE EVIDENCE

On April 27, 2007, the complainant, Felix Hernandez, was celebrating his birthday by watching television at the home he shared with his father and brother. That afternoon, he decided to call "Nightline," a chat line for meeting women. As a result of his call to Nightline, he began talking to a woman who identified herself as "Candy." Hernandez and Candy arranged to meet at Candy's apartment for the purpose of having sex, for which Hernandez would pay Candy $20.00. Hernandez drove to Candy's apartment and knocked on the door. After Candy let him in, he followed Candy into a bedroom and paid her $20.00. Candy appeared to have locked the bedroom door. Candy removed her bathrobe, Hernandez removed his pants, and they began "messing around." At that point, a man, later identified as Robert Cooper, walked into the bedroom holding a twelve-inch combat knife. Cooper asked what was going on. He then told Hernandez to sit down, not to move, and not to put his pants on. At first, Hernandez thought Cooper was a husband or boyfriend who had caught Hernandez and Candy doing something they should not be doing. Hernandez explained that he had met Candy on Nightline and had agreed to trade sex for money. Hernandez testified that he was scared. Cooper then said that Candy usually charges more than $20.00 and that she should have charged Hernandez $300.00. Cooper began searching through Hernandez's pants

with one hand while holding the knife in the other. Cooper found another $20.00 in Hernandez's pants. Hernandez told Cooper to take the money and let him go. Cooper took the money, but seemed to want more.

Hernandez testified he is 6'1" tall and weighs 300 pounds, which makes him "a little bit bigger" than Cooper. Hernandez did consider trying to escape, but felt he was at an obvious disadvantage because Cooper had a weapon on him and there were two of them against him. Additionally, Hernandez testified that Cooper and Candy began arguing about a gun. Cooper told Candy to go get his gun, but Candy was laughing about it, trying to convince him not to send her to get the gun. Cooper then told Candy to go search Hernandez's vehicle for more money and to get the license plate number from the vehicle. Cooper found Hernandez's car keys in his pants pocket and gave them to Candy. When Candy left the room, Cooper continued to hold the knife on Hernandez. Cooper also displayed his tattoos and told Hernandez that he was "connected." Hernandez understood this to mean Cooper wanted him to know that "he knew people" and "he knew a way to find [him] through [his] license plates." When Candy returned, she had a piece of paper with the license plate number written on it, along with about $100. Cooper questioned the amount of money, to which Hernandez responded there was about $400.00 in the car. Cooper and Candy then began arguing. But, according to Hernandez, although Candy and Cooper were acting like they were arguing, Candy was laughing. Hernandez then put on his pants and was allowed to leave.

After Hernandez left the apartment, he got in his car, saw that his money was gone, and drove away. As he drove away, he kept looking behind him because he was afraid Cooper and Candy would follow him. Hernandez then called the police from his cell phone. He met the police at a gas

station and told them what had happened at the apartment. The police then followed him back to the apartment. He pointed out the apartment to the police, but stayed in his own car. The police knocked on the apartment door, but no one was there. At a later date, a detective contacted Hernandez about the incident. Hernandez gave a written statement to the detective and identified Cooper in a lineup.

San Antonio Police Department Officer Jerry Fuller responded to Hernandez's call reporting the robbery. When Officer Fuller met Hernandez at a gas station, Hernandez reported he had been robbed at an apartment complex. A second officer met them, and they followed Hernandez back to the apartment complex where he said he had been robbed. The two officers knocked on the apartment door, but there was no answer. An apartment maintenance man gave Officer Fuller the name of the woman who lived in the apartment. Hernandez did not tell Officer Fuller that he had been to the apartment for the purpose of purchasing sex. Neither did Hernandez mention that a gun was involved in the incident.

Detective Steve Almanza of the San Antonio Police Department testified that Hernandez's robbery case was assigned to him to investigate. Detective Almanza contacted Hernandez and then began trying to locate the suspects. He determined that Diane Brown lived at the apartment where Hernandez was robbed. The police computer system showed that Diane Brown had filed a disturbance report against Mark Guy, which was an alias for Cooper. Detective Almanza prepared a photo lineup, and Hernandez identified Cooper as the man who robbed him.

## DISCUSSION

Cooper argues that the evidence supporting the finding that Cooper committed aggravated robbery was so weak as to require a reversal because the evidence he threatened Hernandez or placed him in fear of imminent bodily injury or death is too weak to support the verdict. According to

Cooper, Hernandez's testimony was "flawed from the start" because he was "fundamentally dishonest with the San Antonio Police Department when he reported this case." In short, Cooper emphasizes that Hernandez did not tell the officers he had gone to the apartment to purchase sex.

To further support his argument, Cooper contends that when Hernandez testified that he did not try to leave the apartment because Cooper was holding a knife on him and there were two of them (meaning Candy and Cooper) against one, Hernandez was merely "posturing to the jury." According to Cooper, Candy was no threat to Hernandez because she was in a "state of undress." And, once Candy went to get the money from Hernandez's vehicle, she was not a threat because she was no longer present in the apartment.

Cooper also argues that he did not present much of an obstacle to Hernandez because he was smaller than Hernandez. And, even though Cooper wielded a knife and asked Candy to get a gun, Cooper argues that the discussion about the gun was not serious because Candy was laughing about it. Cooper also points out that Hernandez's first impression was that he had been caught by an irate husband or boyfriend doing something he should not have been doing with the man's wife or girlfriend. According to Cooper, it would have been implausible to Hernandez that Cooper would have lured him to his own apartment for the purpose of robbing him. Therefore, Cooper argues that he did nothing that could have implied a threat to Hernandez.

Applying the appropriate standard of review, we find the evidence factually sufficient to support the jury's finding of aggravated robbery. While the evidence does show that Hernandez failed to report to the officers that he had been at the apartment to trade sex for money, this omission did not totally undermine his credibility. Indeed, Cooper acknowledges that Hernandez did not "outright lie" to the officers. And, there is nothing in the record to contradict the facts Hernandez did

report to the officers concerning the robbery. We recognize that the jury has already passed on the facts and, therefore we give due deference to the jury's determinations. *See Lancon*, 253 S.W.3d at 704.

Further, while Candy may not have been much of a threat to Hernandez, Cooper, nevertheless, continuously held a twelve-inch combat knife on Hernandez. And, although Cooper may have been smaller than Hernandez, it was Cooper who was wielding the knife while Hernandez remained partially undressed and, in Hernandez's words, scared. Further, Hernandez's testimony that he initially believed he had been discovered by Cooper as Candy's husband or boyfriend, doing something he should not have been doing, was apparently found by the jury not to be of significance. Instead, the jury likely focused on the evidence that Cooper held Hernandez at knifepoint and took his money.

Viewing all the evidence in a neutral light, and considering that Cooper undisputedly displayed a deadly weapon, we hold that a reasonable person in Hernandez's situation would have been placed in fear of bodily injury or death. Therefore, the evidence is factually sufficient to support the jury's finding that Cooper threatened Hernandez or placed him in fear of imminent bodily injury or death.

## CONCLUSION

Because the evidence is factually sufficient, we affirm the judgment of the trial court.

Karen Angelini, Justice

DO NOT PUBLISH