02-09-386-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00386-CR 

 

 


 
 
 Anthony Gerald Danko a/k/a Anthony
 Danko
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

----------

 

FROM Criminal District Court No. 1
OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

Appellant
Anthony Gerald Danko a/k/a Anthony Danko appeals his convictions for three counts of
aggravated assault on a public servant with a deadly weapon, to wit: a firearm.
 In three issues, Danko
argues that the evidence is insufficient to sustain his conviction and that the
prosecutor engaged in improper argument during the State’s closing
argument.  We will affirm.

II. 
Factual and Procedural Background

          Danko was going through a divorce.  He sent his sister a disturbing text message
suggesting that he was contemplating suicide.  She went to his home to check on him, but he
would not answer the door or his phone.  Fearing the worst, she called 911.  The Fort Worth fire department was dispatched
to Danko’s home regarding an attempted suicide.  Four firefighters arrived at Danko’s home at around 9:00 p.m.; all the lights in the
house were off and Danko’s car was not in the
driveway, but Danko’s sister insisted that he was
inside the house.  She told Fort Worth
Fire Department Lieutenant Mark Keller that Danko
owned a gun.

          Fort
Worth Police Officers Craig Thomas, Julio Argueta,
and John David Riggall arrived shortly and knocked on
Danko’s door, identifying themselves as Fort Worth
police officers.  When no one answered,
they used flashlights to look into the windows of the house to determine if
anyone was inside.  They did not see
anyone inside the house.  Officer Thomas
called his supervisor and received permission to force entry into Danko’s house.  Officer Argueta volunteered
to kick in the door, but after two unsuccessful attempts, the men decided to
use a sledgehammer.  The four
firefighters and the three police officers stood outside the front door, the
police officers drew their weapons and shouted, “[P]olice,”
and one firefighter, Daniel Terrell, struck the door nine or ten times with a
sledgehammer before the lock gave way.  When the door swung open, Danko
was standing in the entranceway; he was holding a drinking glass in one hand
and a revolver in the other.  He was
holding the revolver down to his side, with it pointed to the floor.  The police officers began yelling for him to “drop
the gun, drop the gun.”  Instead, Danko raised the gun toward the officers and the
firefighters, and Officer Thomas responded by raising his own gun.  Afraid that Danko
would pull the trigger, Officer Thomas fired his gun
at Danko four times, until Danko
dropped to the ground.  Danko was shot in the hand and the chest, but he survived.

Fort Worth Officer Lori Scheiern,
who works the crime scene search unit, and Dorsa Meter, who is the range master
for the Fort Worth Police Department, inspected Danko’s
gun and determined that it was fully loaded and that one of the bullets from
Officer Thomas’s gun hit the barrel of Danko’s gun
and entered the chamber of that gun.  Officer Scheiern
concluded that, based on the damage to Danko’s gun,
both guns were pointed directly at each other when the bullet from Officer
Thomas’s gun struck Danko’s gun.

          Danko was charged with three counts of aggravated assault
on a public servant, one for each of the three officers involved.  The jury convicted him of each count and
assessed his punishment at five years’ imprisonment for the first count and at
ten years’ imprisonment for the second and third counts; the jury recommended
that the ten-year sentences for counts two and three be suspended and that Danko be placed on community supervision.  The trial court sentenced Danko
accordingly, ordering that the ten-year sentences in counts two and three be
suspended for ten years.

III.   Sufficiency of the Evidence 

In his
first issue, Danko argues that the evidence is
factually insufficiency to support his conviction.  After Danko filed
his brief but before oral argument in this court, the court of criminal appeals
handed down its decision in Brooks v.
State, holding that there is no meaningful distinction between the factual
sufficiency standard and the legal sufficiency standard.  See 323 S.W.3d 893, 902 (Tex. Crim. App. 2010).  During oral argument, Danko’s
appellate counsel stated that Brooks “foreclosed”
Danko’s factual sufficiency complaint, and he
requested that we not address his first issue. 
[oral]   Consequently, we overrule Danko’s
first issue.

In his third issue, Danko
argues that the evidence is legally insufficient to sustain his conviction for
aggravated assault on Officer Argueta, a public
servant, because no evidence showed that the officer perceived a threat.

A.  Standard of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).

This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences
from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton,
235 S.W.3d at 778.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d
564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214
S.W.3d 9, 16–17 (Tex. Crim. App. 2007). 
We must presume that the factfinder resolved
any conflicting inferences in favor of the prosecution and defer to that
resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.  The standard of review is the same for direct
and circumstantial evidence cases; circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.  Clayton, 235 S.W.3d
at 778; Hooper, 214 S.W.3d at 13.

B.  Law on Aggravated Assault on a Public Servant

A person commits the offense of aggravated assault on
a public servant with a deadly weapon if he (1) intentionally or knowingly (2)
threatens a person (3) that the actor knows to be a public servant (4) with
imminent bodily injury (5) while the public servant is lawfully discharging an
official duty and (6) employs a deadly weapon in the assault.  See
Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2)(B)
(Vernon Supp. 2010).

“‘The display of a deadly weapon of and within itself
constitutes a threat of the required imminent harm.’” Sosa v. State, 177 S.W.3d 227, 231 (Tex.
App.—Houston [1st Dist.] 2005, no pet.) (quoting Robinson v. State, 596 S.W.2d 130, 133 n.7 (Tex. Crim. App. 1980));
cf. Peterson v. State, 574 S.W.2d 90,
92 (Tex. Crim. App. [Panel Op.] 1978) (holding that “implicit in the allegation
that a ‘Deadly Weapon’ was used to threaten the complainant is the possibility
that the complainant was threatened with death as well as bodily injury”).

C.  Sufficient Evidence of Threat

          Officers
Riggall and Thomas, the complainants named in counts
one and three of the indictment, both testified at trial, but Officer Argueta was unavailable to testify.  Consequently, Danko argues
that the evidence is insufficient to sustain his conviction for aggravated
assault on Officer Argueta (count two) because no
evidence shows that Officer Argueta “saw Mr. Danko’s gun or that he ever perceived a threat.”

The testimony at trial established that Officers Riggall, Thomas, and Argueta, in
addition to four firefighters, were all standing in close proximity to Danko’s front door when Terrell broke down the door, that Danko was standing just inside the entrance and facing the
door when the door swung open, and that he raised his gun and pointed it
directly at the firefighters and police officers.  Officer Thomas testified that Officer Riggall and Officer Argueta were
standing a little in front of him and to the left when the door swung open and
that the three officers “kind of made a semicircle” around two of the
firefighters.  Officer Riggall and Officer Thomas both testified that they saw Danko raise and point his gun at them and that they felt
threatened by that action.  Lieutenant
Keller testified that Danko raised the gun “point
blank” toward the officers and firefighters and that he immediately thought,
“One of us is going to get shot right now . . . .”  Terrell testified that Danko
pointed his gun “directly at me and the three officers that were standing to my
immediate right,” that all of the officers and the firefighters were “within a
few feet of a gun pointed at us,” and that he thought he was going to get
shot.  And significantly, Officer Riggall recalled hearing Officer Argueta
yell at Danko to “drop the gun” when Danko raised the gun, and Officer Riggall
testified that he believed Officer Argueta saw the
gun before he did.

This testimony establishes not only that Danko pointed a gun at the officers and firefighters but
also that Officer Argueta saw the gun; Danko’s display of a gun was sufficient to establish the
required threat of imminent bodily harm. 
See Robinson, 596 S.W.2d at
133 n.7; Sosa, 177 S.W.3d at 231
(holding sufficient evidence of threat when two eyewitnesses, but not victim,
testified that defendant held gun in his hands, demanded money, and walked in
and out of bedroom where victim was laying on the floor); Villatoro v. State, 897 S.W.2d 943, 945 (Tex. App.—Amarillo 1995, pet. ref’d) (“Since firearms are deadly weapons, . . . the
testimony revealing that Appellant pointed such a weapon at Jones was enough to
support his conviction beyond reasonable doubt.” (citation
omitted)).  Viewing the evidence in the
light most favorable to the verdict, we conclude that
a rational trier of fact could have found beyond a reasonable doubt that Danko committed aggravated assault on Officer Argueta, a public servant.  See Tex.
Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2)(B);
Jackson, 443 U.S. at 326, 99 S. Ct.
at 2793; Clayton, 235 S.W.3d at
778.  Accordingly, we overrule Danko’s third issue.

IV. 
Improper Jury Argument

          In his
second issue, Danko argues that the State’s closing
arguments during the guilt/innocence stage of trial improperly urged the jury
to convict him of aggravated assault so it could assess a greater punishment
than the punishment available if the jury found him guilty of the lesser
offense of deadly conduct.  The trial
court’s charge to the jury included instructions on the lesser offense of
deadly conduct.  During the State’s
closing argument, the first prosecutor argued:

[Prosecutor]:  Now, with regard to
the charge, what you have here is three counts of aggravated assault on a
public servant, and in each one of those three counts, you have a lesser
offense, a lesser misdemeanor offense of deadly conduct.

 

[Defense Counsel]:  I object to
the characterization that it’s a lesser misdemeanor offense.  That’s improper, and I object.

 

          THE COURT:  Sustained.

 

[Defense Counsel]:  And I ask for
an instruction to disregard.

 

THE COURT:  Well, you know that
you are not to consider anything that’s sustained.

 

[Defense Counsel]:  Move for a
mistrial.

 

THE COURT:  Denied.

 

[Prosecutor]:  You have a lesser
offense of deadly conduct.

 

[Defense Counsel]:  I object.  I object, the repeated characterization of
“lesser” –

 

THE COURT:  Overruled.

 

At the end of the State’s rebuttal closing argument,
the second prosecutor argued, “And Lieutenant Keller, I think from this witness
stand, sums up what was going through those seven individuals’ minds, and this
will tell you why it’s not just deadly conduct. 
Deadly conduct sounds bad in the charge, but it’s not nearly as bad as
aggravated assault.”  Defense counsel
objected, arguing that the trial court had previously sustained his objection
to the same argument by the first prosecutor, and the trial court overruled the
objection.

A.  Standard of Review

To
be permissible, the State’s jury argument must fall within one of the following
four general areas:  (1) summation
of the evidence; (2) reasonable deduction from the evidence;
(3) answer to argument of opposing counsel; or (4) plea for law
enforcement.  Felder v. State, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. State, 493 S.W.2d 230, 231
(Tex. Crim. App. 1973).

          When a trial court sustains an
objection and instructs the jury to disregard but denies a defendant’s motion
for a mistrial, the issue is whether the trial court abused its discretion by
denying the mistrial.  Hawkins v. State, 135
S.W.3d 72, 76–77 (Tex. Crim. App. 2004). 
Only in extreme circumstances, when the prejudice caused by the improper
argument is incurable, i.e., “so prejudicial that expenditure of further time
and expense would be wasteful and futile,” will a mistrial be required.  Id.;
see also Simpson v. State, 119 S.W.3d
262, 272 (Tex. Crim. App. 2003), cert.
denied, 542 U.S. 905 (2004).

B.  Argument Not Improper

          Danko argues that the Texas Court of Criminal Appeals’s decision in McClure
v. State is “on ‘all fours’ with this case.”  See 544 S.W.2d 390, 393–394 (Tex. Crim. App. 1976).  In McClure,
the court of criminal appeals reversed and remanded a conviction based on the
prosecutor’s repeated argument that the jury should convict the defendant of
murder because it had a greater punishment range than that available for
manslaughter.  Id. at 393­–95.  The court of criminal appeals held that the
argument was improper because it “was a plea to the jury to consider the amount
of punishment, rather than the facts, in determining the offense for which
appellant should be convicted.”  Id. at 395.

Here, unlike in McClure,
the complained-of arguments—that deadly conduct is a lesser misdemeanor offense
and is not as bad as aggravated assault—did not urge the jury to convict Danko based on a punishment range instead of the
facts.  The complained-of comments are
more analogous to the prosecutor’s argument in Hart v. State, in which the prosecutor informed the jury that one
of the lesser included offenses was a misdemeanor.  See 581
S.W.2d 675, 678­–79 (Tex. Crim. App. [Panel Op.] 1979).  In Hart,
the court of criminal appeals held that the prosecutor’s argument was proper
and explained that “[t]he harm is not in informing the jury concerning
punishment, but argument for conviction based on punishment.”  See
id. (distinguishing
McClure).

In Danko’s case, the first prosecutor
mentioned the classification of the deadly conduct offense in the context of
explaining how to read the charge.  She
explained that “the way it works” is that the jury must first determine whether
the State proved beyond a reasonable doubt that Danko
committed aggravated assault on a public servant and, if not, “move to the next
part, which is deadly conduct.”  The
prosecutor argued that the facts of the case show that Danko
committed aggravated assault on a public servant, rather than deadly conduct,
and she urged the jury to read the charge in its entirety and apply the law to
the facts.  The second prosecutor built
onto the first prosecutor’s argument and explained why the facts of the case
showed that Danko had committed the greater offense
of aggravated assault.  The prosecutors
did not comment on the punishment assigned to the offenses, did not refer to
the classification for the greater aggravated assault offense, and did not
argue that certain convictions would carry heavier sentences.  See id.;
see also Matini
v. State, No. 05-03-00686-CR, 2004 WL 1089197, at *6 (Tex. App.—Dallas May
17, 2004, no pet.) (not designated for publication) (distinguishing McClure
because State’s comment—“This is not a misdemeanor trespass.  This is a burglary of a habitation.”—did not
refer to any differences in the range of punishment); McCullen v. State, 659 S.W.2d 455, 459 (Tex. App.—Dallas 1983, no pet.) (holding argument that informed jury of different ranges of
punishment for aggravated robbery and aggravated assault not improper when made
in the course of explaining why facts showed defendant committed the greater
offense).

In reviewing the record and in considering the
arguments from the viewpoint of the jury, we do not conclude that the
prosecutors’ arguments urged the jury to convict Danko
of one offense over another because of the difference in punishment.  See
Hart, 581 S.W.2d at 678­–69.  Consequently, we hold that the State’s
comments were proper, and we overrule Danko’s second
issue.

 

V.  Conclusion

Having
overruled Danko’s three issues, we affirm the trial
court’s judgment.

 

 

SUE WALKER
JUSTICE

 

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 20, 2011











          [1]See Tex. R. App. P. 47.4.