Opinion issued January 20, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00938-CR

———————————

Oscar Olivares, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 337th Criminal District Court 

Harris County, Texas



Trial Court Case No. 1170743



 

MEMORANDUM OPINION

Appellant
Oscar Olivares and his brother were indicted for aggravated robbery and tried
together.  Olivares was charged as an
accomplice under the law of parties.  Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003).  A jury convicted Olivares of the lesser-included
offense of aggravated assault.  See id. §§ 22.01, 22.02 (Vernon
Supp. 2010); see Tex. Code Crim. Proc. art. 37.09
(Vernon 2006).  The court assessed
punishment at 40 years’ confinement in prison. 
Olivares appeals, arguing that the evidence is factually insufficient to
support his conviction.  We affirm.

Background

          The testimony at trial
established that Oscar Olivares went to complainant Erika Rodriguez’s home on
the afternoon of May 22, 2008.  Rodriguez’s
roommate Chante Jones answered the door and let Olivares into the living room.  Jones told Rodriguez that Olivares wanted to
see her, but Rodriguez was in bed and told Jones to tell him to go away.  Olivares did not leave; instead, he waited
several hours at the house for Rodriguez to get up. 

          Jones
testified that a friend of Rodriguez drove her and Olivares to a restaurant where
they bought dinner.  When Olivares and
Jones returned to the house, Rodriguez was awake.  Rodriguez, Jones, and Olivares ate together
in the living room.  Jones testified that
Olivares stepped outside to take a phone call. 
Several minutes later, Olivares’s brother, who at that time was unknown
to Jones and Rodriguez, burst through the door brandishing a gun.  He fired and ordered the women to go into the
front bedroom where Olivares tied them up. 
Jones testified that Olivares bound her and Rodriguez’s hands and feet.  Jones was on her back or side with her hands
tied behind her back.  She could see
Olivares going into and coming out of a spare bedroom, which Jones and
Rodriguez both admitted was full of stolen property.  Rodriguez was also tied up, but she could not
see what Olivares was doing.  Olivares’s
brother, who was pointing his gun at the women, began cursing and yelling at
Rodriguez and Jones.

          Rodriguez
testified that after some time had passed, one of the defendants said,
“Somebody’s coming.”  Olivares’s brother,
who was behind Rodriguez at the time, cursed at Rodriguez and then shot her in
the head.  He then pointed the gun at
Jones and pulled the trigger, but the gun did not discharge.  Jones testified that the gun went “click,
click, click.”  Both Olivares and his
brother then fled the scene.

          Jones,
who believed Rodriguez was dead, freed herself from the rope bindings, rolled
under the bed, and escaped out the window. 
She ran to a friend’s house nearby and called the police.  The 9-1-1 operator indicated that a police
unit and ambulance had already been dispatched to the house.  Jones then returned to the house, where the
EMTs and responding officer were already on the scene.

          Officer
M. Agee, the first responding officer, conducted a preliminary investigation.  He briefly interviewed both women before
Rodriguez was taken to the hospital.  Hospital
records admitted into evidence indicated that Rodriguez suffered a gunshot
wound to the scalp.  When she testified
at trial, the bullet had not been removed from her head.

Officer Agee testified that he did
not see any blood in the bedroom where Jones and Rodriguez were tied up.  He did not collect any physical evidence at
the scene, nor did he request a crime scene unit to collect evidence.  Officer Agee testified that he saw a small
piece of rope between 8 and 12 inches in length on the floor of the bedroom,
but he neither collected it nor made a note of it in his report.

Sergeant G. Urie conducted the
follow-up investigation and interviewed both witnesses.  Based on the information provided by Jones
and Rodriguez, Sgt. Urie prepared a photo array containing a picture of
Olivares.  Both Jones and Rodriguez
positively identified him as their attacker. 
Sgt. Urie also showed Jones and Rodriguez a photo array containing an
image of Olivares’s brother.  Only Jones
was able to positively identify Olivares’s brother.

Olivares was later indicted on
aggravated robbery charges under the law of parties.  Tex.
Penal Code Ann. § 7.02(a)(2).  The jury convicted him of the lesser-included
offense of aggravated assault with a deadly weapon.  The court assessed punishment at 40 years’ imprisonment.  Olivares timely filed a notice of appeal, and
he argues on appeal that the State failed to present factually sufficient
evidence to support his conviction.

Analysis

          In his sole issue, Olivares challenges the factual sufficiency of the evidence
to support his conviction.  Specifically,
he argues that the State’s witnesses lacked credibility and that the lack of
physical evidence undermines the verdict. 
He further contends that because the jury found him not guilty of
aggravated robbery, they could not, based on the same testimony, also convict
him of the lesser-included offense of aggravated assault.

I.                 
Standard of review

A court reviewing the sufficiency of evidence to support a
criminal conviction must determine “whether, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.”  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979).  Our state-law standard for reviewing the
factual sufficiency of the evidence mirrors the standard required by the United
States Constitution.  See Brooks v. State, 323 S.W.3d 893, 911–12
(plurality op.), 926 (Cochran, J., concurring) (Tex. Crim. App. 2010)
(articulating legal standard for factual-sufficiency review by courts of
appeals).

The jury is the exclusive judge of the facts.  Tex.
Crim. Proc. Code Ann. arts. 36.13, 38.04 (Vernon 2007 & 1979); Brooks, 323 S.W.3d at 908.  Accordingly, “[a]ppellate courts should
afford almost complete deference to a jury’s decision when that decision is
based upon an evaluation of credibility.” 
Lancon v. State, 253 S.W.3d
699, 705 (Tex. Crim. App. 2008).  “The
jury is in the best position to judge the credibility of a witness because it
is present to hear the testimony, as opposed to an appellate court who relies
on the cold record.”  Id. 
The jury is the sole
judge of the credibility of the witnesses and may accept or reject any part or
all of the testimony given by the State or defense witnesses.  Johnson v. State, 571 S.W.2d 170, 173 (Tex. Crim. App.
1978).  Accordingly, the factfinder may
choose to believe some testimony and disbelieve other testimony.  Lancon, 253 S.W.3d at 707.

II.              
Aggravated assault

A person commits assault when he
intentionally, knowingly, or recklessly causes or threatens another with
imminent bodily injury.  Tex. Penal Code Ann. § 22.01(a)(1)–(2).  The offense of assault becomes aggravated
assault if, during the commission of the assault, the offender causes serious
bodily injury to another or uses or exhibits a deadly weapon during the
commission of the assault.  Id. § 22.02(a)(2). 
Under the law of parties, a person is criminally responsible for an
offense committed by the conduct of another if he acts with intent to promote
or assist the commission of the offense. 
Id. § 7.02(a)(2).  

Here, Olivares argues that the
evidence is factually insufficient because the testimony of Jones and Rodriguez
was “punctuated with discrepancies,” one or both of them was lying, and the
witnesses’ testimony lacked credibility. 
Olivares contends that because the witnesses’ testimony was not
credible, the jury could not have acquitted him on the aggravated robbery
charge without also acquitting him of the lesser-included offense of aggravated
assault.  Olivares also points to the
lack of physical evidence, arguing that the evidence is factually insufficient because
the responding officer failed to collect physical evidence at the scene of the
crime.

A.              
Discrepancies in testimony

Olivares argues that Jones and
Rodriguez were not credible witnesses because of discrepancies in their
testimony.  The discrepancies relied upon
by Olivares relate to the witnesses’ living arrangements, the facts relating to
the trip to buy dinner, the number of gunshots and how the witnesses were tied
up, and differences in their accounts to the police.

Jones testified initially that she
was living with Rodriguez because the school she attended was nearby.  Jones later admitted she had dropped out of
school and had not been attending school for several months.  Jones testified that only she and Rodriguez
lived at the house, but Rodriguez testified that another young woman also lived
there.  Although Jones testified that
Rodriguez did not work while she was living with her, Rodriguez testified that
she was working.  She admitted that she
had been laid off but could not recall when.

With respect to the excursion to
get dinner, Rodriguez testified that Jones and Olivares returned with food
after she had gotten out of bed.  At
trial, Jones testified that she, Olivares, and Rodriguez’s friend went to a
fast food restaurant to pick up food. 
When Sgt. Urie testified, however, he stated that Jones initially said
that Rodriguez had gone with the other three.

As to facts of the crime, Jones
testified that Olivares’s brother fired between four and five times: once at
the floor, once at Rodriguez’s head, and three times at her.  With respect to the shots aimed at her, she
testified that the gun did not discharge but went, “click, click, click.”  Rodriguez recalled hearing two shots, once in
the living room and once at her head.  In
regards to how they were tied up, Jones said that she and Rodriguez were tied
up together, while Rodriguez testified that they were tied up separately.

Sgt. Urie’s testimony also revealed
several inconsistencies in the statements Jones and Rodriguez made to the
police.  Rodriguez first told Sgt. Urie
that Jones was her niece, but later she admitted that they were not
related.  Sgt. Urie further testified
that Rodriguez changed her story about her connection to Olivares.  First, she indicated to Sgt. Urie that
Olivares was her boyfriend, she said that she had seen him at a store several
days before the incident, and then she told him that Olivares had been working
in her house.

Despite these discrepancies, the
testimony of Jones and Rodriguez at trial and the statements they made to
Officer Agee and Sgt. Urie about the assault were fairly consistent.  Jones and Rodriguez recalled some of the
details differently, but both testified that Olivares’s brother had a gun that
looked like a revolver, that he fired it at the ground, that Olivares tied them
up, that Olivares was going into and out of the room containing stolen
property, that his brother was yelling, swearing, and pointing the gun at them,
and that Olivares’s brother shot Rodriguez before fleeing the scene. 

Olivares’s challenges to the factual sufficiency of the
evidence are based on the credibility of the witnesses and the weight given to
their testimony—issues on which this Court must defer to the factfinder.  See
Lancon, 253 S.W.3d at 705.    There
was sufficient evidence to sustain Olivares’s conviction because there was
testimony that established the essential elements of aggravated assault with a
deadly weapon.  Sosa v. State, 177 S.W.3d 227, 231–232 (Tex. App.—Houston [1st
Dist.] 2005, no pet.) (holding that evidence that defendant committed
aggravated assault was sufficient where eyewitnesses testified that defendant’s
accomplice pointed gun at complainant);
see also Padilla v. State, 254 S.W.3d 585, 590 (Tex. App.—Eastland 2008,
pet. ref’d) (holding that the victim’s testimony about aggravated assault was
sufficient).  In any event, the jury was free to believe or
disbelieve the testimony of any witness in whole or in part.  See Lancon,
253 S.W.3d 707.

B.              
Physical evidence

Olivares also contends that the
evidence is factually insufficient because there was no corroborating physical
evidence admitted at trial.  Although
Officer Agee did not collect any physical evidence at the scene, both Jones and
Rodriguez identified Olivares as their attacker in open court and in the photo
array prepared by Sgt. Urie.  And
although no weapon was found, there was undisputed testimony that Olivares’s
brother shot Rodriguez in the head.  Both
Jones and Rodriguez gave a similar description of the size, appearance, and
type of gun used, and they both testified that Olivares’s brother threatened
them with it.  Rodriguez testified: “I
was scared because they came into the house that I was living in and pointed a
gun at me.”  Jones testified that
Olivares’s brother pointed the gun at her and pulled the trigger three times:
“After [Rodriguez] got shot, he pointed the gun at me and it went click. He did
it three times, but it didn’t shoot.  It
just went click, click, click.”  At
trial, the hospital records documenting a gunshot wound to her head
corroborated Rodriguez’s testimony.  She
further testified that the bullet was still in her scalp.

Although Olivares contends that the
lack of physical evidence so undermines the jury’s verdict that it is
manifestly unjust, the evidence presented at trial was sufficient to sustain
his conviction for aggravated assault. See
Jackson, 443 U.S. at 319, 99 S. Ct.
2789; Sosa, 177 S.W.3d at 231–232.   The testimony of Jones and Rodriguez is
sufficient to support a guilty verdict because the victim’s testimony alone,
despite the lack of physical evidence, is sufficient to sustain the jury’s
conviction.  See Sosa
v. State, 177 S.W.3d at 231–232.

C.              
Lesser-included offense

Finally, Olivares argues that the
jury’s verdict was manifestly unjust because he was found not guilty of
aggravated robbery, but “based on the same caliber of testimony,” the jury
convicted him of the lesser-included offense of aggravated assault.  Olivares does not challenge the jury
instruction on the lesser-included offense; he merely argues that because the
jury did not believe Rodriguez when she testified that her property was stolen,
the jury could not believe her testimony in regard to the assault. 

A jury may convict a defendant of a
lesser-included offense if it “is established by proof of the same or less than
all the facts required to establish the commission of the offense charged.”  Tex.
Code Crim. Proc. Ann. art. 37.09.  There is no rule that would require the jury
to completely disregard the testimony of a witness who lied or made
inconsistent statements on the witness stand. 
See Lancon, 253 S.W.3d at 707.  Indeed, the jury is always free to
believe or disbelieve the testimony of any witness in whole or in part.  See id.

Considering all of the evidence
adduced at trial in the light most favorable to the prosecution, we conclude
that a rational trier of fact could have found beyond a reasonable doubt that
Olivares committed the essential elements of the crime of aggravated assault.  We therefore hold that the evidence was not
factually insufficient to support the conviction, and we overrule Olivares’s
sole issue.  

Conclusion

          We affirm
the judgment of the trial court.

 

 

 

Michael
Massengale

                                                                   Justice

 

Panel
consists of Chief Justice Radack and Justices Massengale and Cox.*

Do
not publish.  Tex. R. App. P. 47.2(b).











*        The
Honorable Lonnie Cox, Judge of the 56th District Court of Galveston County,
participating by assignment.