

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00386-CR

ANTHONY GERALD DANKO A/K/A                              APPELLANT
ANTHONY DANKO

V.

THE STATE OF TEXAS                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Anthony Gerald Danko a/k/a Anthony Danko appeals his convictions for three counts of aggravated assault on a public servant with a deadly weapon, to wit: a firearm. In three issues, Danko argues that the

---

[1]*See* Tex. R. App. P. 47.4.

evidence is insufficient to sustain his conviction and that the prosecutor engaged in improper argument during the State's closing argument. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Danko was going through a divorce. He sent his sister a disturbing text message suggesting that he was contemplating suicide. She went to his home to check on him, but he would not answer the door or his phone. Fearing the worst, she called 911. The Fort Worth fire department was dispatched to Danko's home regarding an attempted suicide. Four firefighters arrived at Danko's home at around 9:00 p.m.; all the lights in the house were off and Danko's car was not in the driveway, but Danko's sister insisted that he was inside the house. She told Fort Worth Fire Department Lieutenant Mark Keller that Danko owned a gun.

Fort Worth Police Officers Craig Thomas, Julio Argueta, and John David Riggall arrived shortly and knocked on Danko's door, identifying themselves as Fort Worth police officers. When no one answered, they used flashlights to look into the windows of the house to determine if anyone was inside. They did not see anyone inside the house. Officer Thomas called his supervisor and received permission to force entry into Danko's house. Officer Argueta volunteered to kick in the door, but after two unsuccessful attempts, the men decided to use a sledgehammer. The four firefighters and the three police officers stood outside the front door, the police officers drew their weapons and shouted, "[P]olice," and one firefighter, Daniel Terrell, struck the door nine or ten times with a

2

sledgehammer before the lock gave way. When the door swung open, Danko was standing in the entranceway; he was holding a drinking glass in one hand and a revolver in the other. He was holding the revolver down to his side, with it pointed to the floor. The police officers began yelling for him to "drop the gun, drop the gun." Instead, Danko raised the gun toward the officers and the firefighters, and Officer Thomas responded by raising his own gun. Afraid that Danko would pull the trigger, Officer Thomas fired his gun at Danko four times, until Danko dropped to the ground. Danko was shot in the hand and the chest, but he survived.

Fort Worth Officer Lori Scheiern, who works the crime scene search unit, and Dorsa Meter, who is the range master for the Fort Worth Police Department, inspected Danko's gun and determined that it was fully loaded and that one of the bullets from Officer Thomas's gun hit the barrel of Danko's gun and entered the chamber of that gun. Officer Scheiern concluded that, based on the damage to Danko's gun, both guns were pointed directly at each other when the bullet from Officer Thomas's gun struck Danko's gun.

Danko was charged with three counts of aggravated assault on a public servant, one for each of the three officers involved. The jury convicted him of each count and assessed his punishment at five years' imprisonment for the first count and at ten years' imprisonment for the second and third counts; the jury recommended that the ten-year sentences for counts two and three be suspended and that Danko be placed on community supervision. The trial court

3

sentenced Danko accordingly, ordering that the ten-year sentences in counts two and three be suspended for ten years.

### III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Danko argues that the evidence is factually insufficiency to support his conviction. After Danko filed his brief but before oral argument in this court, the court of criminal appeals handed down its decision in *Brooks v. State*, holding that there is no meaningful distinction between the factual sufficiency standard and the legal sufficiency standard. *See* 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). During oral argument, Danko's appellate counsel stated that *Brooks* "foreclosed" Danko's factual sufficiency complaint, and he requested that we not address his first issue. [oral] Consequently, we overrule Danko's first issue.

In his third issue, Danko argues that the evidence is legally insufficient to sustain his conviction for aggravated assault on Officer Argueta, a public servant, because no evidence showed that the officer perceived a threat.

### A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

4

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Clayton*, 235 S.W.3d at 778; *Hooper,* 214 S.W.3d at 13.

## B. Law on Aggravated Assault on a Public Servant

A person commits the offense of aggravated assault on a public servant with a deadly weapon if he (1) intentionally or knowingly (2) threatens a person (3) that the actor knows to be a public servant (4) with imminent bodily injury (5) while the public servant is lawfully discharging an official duty and (6) employs a deadly weapon in the assault. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2)(B) (Vernon Supp. 2010).

"'The display of a deadly weapon of and within itself constitutes a threat of the required imminent harm.'" *Sosa v. State*, 177 S.W.3d 227, 231 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (quoting *Robinson v. State*, 596 S.W.2d 130, 133 n.7 (Tex. Crim. App. 1980)); *cf. Peterson v. State*, 574 S.W.2d 90, 92 (Tex. Crim. App. [Panel Op.] 1978) (holding that "implicit in the allegation that a 'Deadly Weapon' was used to threaten the complainant is the possibility that the complainant was threatened with death as well as bodily injury").

## C. Sufficient Evidence of Threat

Officers Riggall and Thomas, the complainants named in counts one and three of the indictment, both testified at trial, but Officer Argueta was unavailable to testify. Consequently, Danko argues that the evidence is insufficient to sustain his conviction for aggravated assault on Officer Argueta (count two) because no evidence shows that Officer Argueta "saw Mr. Danko's gun or that he ever perceived a threat."

6

The testimony at trial established that Officers Riggall, Thomas, and Argueta, in addition to four firefighters, were all standing in close proximity to Danko's front door when Terrell broke down the door, that Danko was standing just inside the entrance and facing the door when the door swung open, and that he raised his gun and pointed it directly at the firefighters and police officers. Officer Thomas testified that Officer Riggall and Officer Argueta were standing a little in front of him and to the left when the door swung open and that the three officers "kind of made a semicircle" around two of the firefighters. Officer Riggall and Officer Thomas both testified that they saw Danko raise and point his gun at them and that they felt threatened by that action. Lieutenant Keller testified that Danko raised the gun "point blank" toward the officers and firefighters and that he immediately thought, "One of us is going to get shot right now . . . ." Terrell testified that Danko pointed his gun "directly at me and the three officers that were standing to my immediate right," that all of the officers and the firefighters were "within a few feet of a gun pointed at us," and that he thought he was going to get shot. And significantly, Officer Riggall recalled hearing Officer Argueta yell at Danko to "drop the gun" when Danko raised the gun, and Officer Riggall testified that he believed Officer Argueta saw the gun before he did.

This testimony establishes not only that Danko pointed a gun at the officers and firefighters but also that Officer Argueta saw the gun; Danko's display of a gun was sufficient to establish the required threat of imminent bodily harm. *See Robinson*, 596 S.W.2d at 133 n.7; *Sosa*, 177 S.W.3d at 231 (holding

7

sufficient evidence of threat when two eyewitnesses, but not victim, testified that defendant held gun in his hands, demanded money, and walked in and out of bedroom where victim was laying on the floor); *Villatoro v. State*, 897 S.W.2d 943, 945 (Tex. App.—Amarillo 1995, pet. ref'd) ("Since firearms are deadly weapons, . . . the testimony revealing that Appellant pointed such a weapon at Jones was enough to support his conviction beyond reasonable doubt." (citation omitted)). Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Danko committed aggravated assault on Officer Argueta, a public servant. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2)(B); *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. Accordingly, we overrule Danko's third issue.

## IV. IMPROPER JURY ARGUMENT

In his second issue, Danko argues that the State's closing arguments during the guilt/innocence stage of trial improperly urged the jury to convict him of aggravated assault so it could assess a greater punishment than the punishment available if the jury found him guilty of the lesser offense of deadly conduct. The trial court's charge to the jury included instructions on the lesser offense of deadly conduct. During the State's closing argument, the first prosecutor argued:

> [Prosecutor]: Now, with regard to the charge, what you have here is three counts of aggravated assault on a public servant, and in each one of those three counts, you have a lesser offense, a lesser misdemeanor offense of deadly conduct.

8

[Defense Counsel]: I object to the characterization that it's a lesser misdemeanor offense. That's improper, and I object.

THE COURT: Sustained.

[Defense Counsel]: And I ask for an instruction to disregard.

THE COURT: Well, you know that you are not to consider anything that's sustained.

[Defense Counsel]: Move for a mistrial.

THE COURT: Denied.

[Prosecutor]: You have a lesser offense of deadly conduct.

[Defense Counsel]: I object. I object, the repeated characterization of "lesser" –

THE COURT: Overruled.

At the end of the State's rebuttal closing argument, the second prosecutor argued, "And Lieutenant Keller, I think from this witness stand, sums up what was going through those seven individuals' minds, and this will tell you why it's not just deadly conduct. Deadly conduct sounds bad in the charge, but it's not nearly as bad as aggravated assault." Defense counsel objected, arguing that the trial court had previously sustained his objection to the same argument by the first prosecutor, and the trial court overruled the objection.

### A. Standard of Review

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

When a trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, i.e., "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Id.*; *see also Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004).

### B. Argument Not Improper

Danko argues that the Texas Court of Criminal Appeals's decision in *McClure v.* State is "on 'all fours' with this case." *See* 544 S.W.2d 390, 393–394 (Tex. Crim. App. 1976). In *McClure,* the court of criminal appeals reversed and remanded a conviction based on the prosecutor's repeated argument that the jury should convict the defendant of murder because it had a greater punishment range than that available for manslaughter. *Id.* at 393–95. The court of criminal

appeals held that the argument was improper because it "was a plea to the jury to consider the amount of punishment, rather than the facts, in determining the offense for which appellant should be convicted." *Id.* at 395.

Here, unlike in *McClure*, the complained-of arguments—that deadly conduct is a lesser misdemeanor offense and is not as bad as aggravated assault—did not urge the jury to convict Danko based on a punishment range instead of the facts. The complained-of comments are more analogous to the prosecutor's argument in *Hart v. State*, in which the prosecutor informed the jury that one of the lesser included offenses was a misdemeanor. *See* 581 S.W.2d 675, 678–79 (Tex. Crim. App. [Panel Op.] 1979). In *Hart*, the court of criminal appeals held that the prosecutor's argument was proper and explained that "[t]he harm is not in informing the jury concerning punishment, but argument for conviction based on punishment." *See id.* (distinguishing *McClure*).

In Danko's case, the first prosecutor mentioned the classification of the deadly conduct offense in the context of explaining how to read the charge. She explained that "the way it works" is that the jury must first determine whether the State proved beyond a reasonable doubt that Danko committed aggravated assault on a public servant and, if not, "move to the next part, which is deadly conduct." The prosecutor argued that the facts of the case show that Danko committed aggravated assault on a public servant, rather than deadly conduct, and she urged the jury to read the charge in its entirety and apply the law to the facts. The second prosecutor built onto the first prosecutor's argument and

11

explained why the facts of the case showed that Danko had committed the greater offense of aggravated assault. The prosecutors did not comment on the punishment assigned to the offenses, did not refer to the classification for the greater aggravated assault offense, and did not argue that certain convictions would carry heavier sentences. *See id.*; *see also Matini v. State*, No. 05-03-00686-CR, 2004 WL 1089197, at *6 (Tex. App.—Dallas May 17, 2004, no pet.) (not designated for publication) (distinguishing *McClure* because State's comment—"This is not a misdemeanor trespass. This is a burglary of a habitation."—did not refer to any differences in the range of punishment); *McCullen v. State*, 659 S.W.2d 455, 459 (Tex. App.—Dallas 1983, no pet.) (holding argument that informed jury of different ranges of punishment for aggravated robbery and aggravated assault not improper when made in the course of explaining why facts showed defendant committed the greater offense).

In reviewing the record and in considering the arguments from the viewpoint of the jury, we do not conclude that the prosecutors' arguments urged the jury to convict Danko of one offense over another because of the difference in punishment. *See Hart*, 581 S.W.2d at 678–69. Consequently, we hold that the State's comments were proper, and we overrule Danko's second issue.

## V.  Conclusion

Having overruled Danko's three issues, we affirm the trial court's judgment.


SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 20, 2011