**Opinion issued July 26, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00295-CR

————————————

**DARYL LEE SAAVEDRA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 412th Judicial District Court**
**Brazoria County, Texas**
**Trial Court Case No. 76576-CR**

## MEMORANDUM OPINION

A jury found appellant, Daryl Lee Saavedra, guilty of the offenses of aggravated robbery[1] and aggravated assault.[2]  After finding true the allegation in an

---

[1]    *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).

[2]    *See id.* § 22.02(a)(2) (Vernon 2011).

enhancement paragraph in each indictment that appellant had been previously convicted of a felony offense, the trial court assessed his punishment at confinement for forty-eight years for the offense of aggravated robbery and twenty-five years for the offense of aggravated assault. And it ordered that the sentences run concurrently. In two issues, appellant contends that the evidence is legally insufficient to support his convictions and the trial erred in instructing the jury on the law of parties.

We affirm.

## Background

Javier Cruz-Tovias, the first complainant, testified that on June 26, 2015, while he was preparing to vacuum the inside of his truck at a self-service car wash with his sister, Maria Oviedo, the second complainant, he heard a noise, "turned around," and saw appellant was "pointing at [him] with a gun." Appellant "hollered" at Cruz-Tovias to "give [him] the money, to give him [the] . . . money," saying it "in English and Spanish." He pointed a small "black handgun" approximately six to eight inches from Cruz-Tovias's head. At the same time, appellant also noticed Oviedo and "hollered at her, hey, you girl, don't move." As Cruz-Tovias reached for his wallet to give appellant money, appellant "grabbed" the wallet from him. He also took Cruz-Tovias's ring off of his finger and ripped a chain from his neck. "After [appellant] took everything[,] he pointed and he fired

2

a shot." Cruz-Tovias did not know "if [the shot] was at [him] or the truck" because, as appellant fired, Cruz-Tovias "threw [himself] in the truck." Appellant then "got in a car," and it drove off.

Soon after, a law enforcement officer arrived at the scene and took Cruz-Tovias and Oviedo to another location to determine whether they recognized two detained individuals. Of the two, Cruz-Tovias identified appellant as the assailant, noting that he recognized appellant's face and stating, "I don't [sic] forget it. And the tattoo." He also identified appellant in court as the person with the firearm who had robbed him. However, Cruz-Tovias "never saw" the driver of the car in which appellant had fled.

Oviedo testified that on June 26, 2015, she and Cruz-Tovias went to a self-service car wash to "wash the[ir] truck." As they prepared to vacuum the truck, she heard appellant demanding money from Cruz-Tovias. Oviedo explained that appellant pointed a "little . . . black" firearm at Cruz-Tovias. And when she "went to get [her] wallet," appellant saw her through the truck's window. He then pointed his firearm at Oviedo and told her not to move, which scared her and made her nervous. Appellant did not take anything from Oviedo, but he took Cruz-Tovias's "ring," "chain," and wallet. She then "heard the shot that was fired," a "car came real fast," and appellant got in the passenger side of the car, which drove off. Oviedo further testified that a law enforcement officer subsequently arrived

3

and took her and Cruz-Tovias to a parking lot where they both identified appellant as the person with the firearm who had robbed Cruz-Tovias. And she identified him again in court. Oviedo noted, however, that she and Cruz-Tovias could not identify the driver of the car in which appellant had fled.

Carrie Banuelos testified that, in June 2015, while she was at the self-service car wash after lunch, she saw "a guy in a large Ford SUV vacuuming his car." A gray, four-door Honda Accord then drove up with a driver and a passenger. When the car stopped, "the passenger got out with a gun," "pulled his arm up . . . sideways," and "went towards that guy vacuuming his car." As soon as she saw the gun, Banuelos drove away. As she drove, she called for emergency assistance and "hear[d] a gunshot." Banuelos then drove to a school parking lot where she met with a law enforcement officer and told him what she had seen. She told the officer that the person with the firearm was a "[l]ight skinned Hispanic" with "really short hair" and "the driver [of the car] and the passenger . . . looked pretty similar." Although Banuelos in court identified appellant as the person that she had seen with the firearm at the car wash, she admitted that she was "not sure" whether appellant was the driver of the car or the person with the firearm.

Brazoria County Sheriff's Department Deputy J. Staner testified that while he was on patrol on June 26, 2015, "the City of Pearland . . . put out a be-on-the-lookout for a suspect vehicle that was used in an [a]ggravated [r]obbery." The

4

description given for the car "was a four-door silver car with paper tags." Staner then heard over his radio that a "unit farther north" of him had located the car, so he headed in that direction "to try to intercept them." Staner explained that because the car did not stop for law enforcement officers, he "joined the pursuit," which included several patrol cars with activated emergency lights. Eventually the car stopped when it "rear-ended" another car. "After the vehicle crashed[,] the driver exited the vehicle and ran west or northwest across the southbound lanes of Interstate 45 into a wooded area." However, the passenger of the car "stuck his hands out of the window . . . and [Staner] made contact with the passenger and took him into custody."

Deputy Staner further testified that appellant was the person he took into custody on June 26, 2015, and although appellant did not have a firearm on him, Staner saw one in the car "on the floor." He also noted that Cruz-Tovias and Oviedo positively identified appellant as the person who had robbed Cruz-Tovias with a firearm. And Staner explained that a firearm is a deadly weapon capable of causing serious bodily injury or death.

Pearland Police Department ("PPD") Detective J. Albin testified that on June 26, 2015, he was the first law enforcement officer to arrive at the car wash after the robbery. He met with Cruz-Tovias and Oviedo, and he collected a "shell casing" near their truck. Albin also identified a "mark" on the ground, which

5

indicated a bullet strike near where Cruz-Tovias had been standing when appellant pointed a firearm at him.

PPD Detective E. Morton testified that on June 26, 2015, he collected evidence from the car in which appellant had been a passenger after the robbery. Inside the car, he found items belonging to Cruz-Tovias, including a Texas driver's license with the name "Javier Cruz Tovias." Morton also found a "white towel with some bullets" in it and a "handgun . . . between . . . the passenger seat and the door jamb."

PPD Detective S. Weaver testified that on June 26, 2015, he met Cruz-Tovias and Oviedo at the car wash and then took them to another location to see whether they could identify the person who, with a firearm, had robbed Cruz-Tovias. Cruz-Tovias and Oviedo identified appellant as the passenger of the car and the man with the firearm. Weaver also noted that law enforcement officers recovered $282 from the driver upon his arrest and the following from the car in which appellant was a passenger: $283 inside a wallet, "$8 in Mexican currency," a "gold ring, a gold necklace," a "Texas driver's license," a "visa prepaid debit card," a "Mexican resident ID card," and a "Western Union" card. These items were consistent with Cruz-Tovias's description of the items that had been stolen, and Cruz-Tovias identified them as belonging to him upon viewing them.

Shane Windsor, a forensic scientist for the Texas Department of Public Safety Crime Laboratory in Houston, testified that he performed an analysis of the shell casing and firearm collected in this case. He concluded that the shell casing recovered by Detective Albin from the car wash had been fired by the same firearm recovered from the passenger seat of the car in which appellant had been a passenger after the robbery.

## Sufficiency of Evidence

In his first issue, appellant argues that the evidence is legally insufficient to support his convictions for aggravated robbery, as to Cruz-Tovias, and aggravated assault, as to Oviedo, because "his intent to obtain and maintain control of [Cruz-]Tovias's wallet, at the time he turned toward him with [a] firearm was not shown" and "the [S]tate had to prove [that] [a]ppellant, did then and there while in the course of committing theft of property owned by . . . Oviedo, and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place . . . Oviedo in fear of imminent bodily injury or death, and said defendant did use or exhibit a deadly weapon, namely, a firearm."

We review the legal sufficiency of the evidence by considering all the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789

7

(1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

In reviewing the legal sufficiency of the evidence, we treat direct and circumstantial evidence equally because circumstantial evidence is just as probative as direct evidence in establishing the guilt of a defendant. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence constitutes "direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven." *Taylor v. State*, 684 S.W.2d 682, 684 (Tex. Crim. App. 1984). And it alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Further, the "cumulative force" of all the circumstantial evidence in a case can be sufficient to support a jury finding of guilt beyond a reasonable doubt. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

"Intent is almost always proven by circumstantial evidence." *Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi 2006, pet. ref'd); *see also Hart v. State,* 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) ("Direct evidence of the requisite intent is not required."); *Smith v. State*, 56 S.W.3d 739, 745 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims." *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999).

***Aggravated Robbery***

A person commits the offense of robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2011). A person commits the offense of aggravated robbery if he commits a robbery and "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2) (Vernon 2011). A firearm is considered a deadly weapon per se. *Id.* § 1.07(a)(17)(A) (Vernon Supp. 2017); *Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt

9

or commission of theft." TEX. PENAL CODE ANN. § 29.01(1) (Vernon 2011). Theft is the unlawful appropriation of property with intent to deprive the owner of the property. *Id.* § 31.03(a) (Vernon Supp. 2017).

Here, Cruz-Tovias and Oviedo both, shortly after the robbery and again at trial, positively identified appellant as the person with the firearm who had robbed Cruz-Tovias. And they identified him in court as the assailant. Cruz-Tovias testified that appellant held a firearm six to eight inches from his head and demanded money. Appellant then took cash and other belongings from him, fired a shot, and got into the passenger side of a car that drove away. Cruz-Tovias recognized appellant by "[h]is face, I don't [sic] forget it" and his "tattoo." Further, Oviedo testified that appellant pointed a firearm to Cruz-Tovias's head and took his wallet, ring, and chain necklace. And Banuelos testified that she saw appellant approach Cruz-Tovias with a firearm. Additionally, Deputy Staner and Detective Morton testified that, immediately following the robbery, law enforcement officers recovered a firearm from the passenger side of the car in which appellant was a passenger. And Windsor's testimony links that firearm to the shell casing recovered by Detective Albin at the car wash.

Such evidence is sufficient to support appellant's conviction for the aggravated robbery of Cruz-Tovias. *See Gilmore v. State*, 397 S.W.3d 226, 240 (Tex. App.—Fort Worth 2012, pet. ref'd) (complainant unequivocally identified

defendant as shooter and "jury could have reasonably concluded beyond a reasonable doubt that [defendant] was the man in the park who shot [complainant] based on th[is] identification testimony alone"); *see also Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) (complainant's identification of defendant "as the man who raped her" sufficient); *Padilla v. State*, 254 S.W.3d 585, 590 (Tex. App.—Eastland 2008, pet. ref'd) ("[T]he victim's testimony alone is sufficient to support a guilty verdict."); *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("It is well established that a conviction may be based on the testimony of a single eyewitness."). We further note that appellant's possession of stolen property at the time of his arrest, including a driver's license bearing Cruz-Tovias's name, and the fact that he fled the scene of the crime permit inferences of guilt. *Rollerson v. State*, 227 S.W.3d 718, 724–25 (Tex. Crim. App. 2007) ("[A] defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary."); *Sosa v. State*, 177 S.W.3d 227, 230 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("[E]vidence of flight from a crime scene is a circumstance from which an inference of guilt may be drawn.").

Although appellant asserts that "his intent to obtain or maintain control of Tovias'[s] wallet, at the time he turned toward him with the firearm, was not shown," Cruz-Tovias testified that appellant grabbed his wallet from him as he was

11

attempting to give appellant money from it. And Cruz-Tovias and Oviedo testified that appellant approached them with a firearm and demanded money. *See Edwards v. State*, 497 S.W.3d 147, 159 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) ("The intent to obtain or maintain control of property may be inferred from appellant's actions and a verbal demand for money or property is not required.").

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have determined beyond a reasonable doubt that appellant committed the aggravated robbery of Cruz-Tovias. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction for the offense of aggravated robbery.

***Aggravated Assault***

A person commits an assault if he "intentionally or knowingly threatens another with imminent bodily injury." TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp. 2017). A person commits the offense of aggravated assault if he "commits assault as defined in [section] 22.01 and [he] . . . uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2) (Vernon 2011). A firearm is a deadly weapon per se. *Id.* § 1.07(a)(17)(A); *see also Jones v. State*, 500 S.W.3d 106, 113 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (Vernon Supp. 2017). "The

12

display of a deadly weapon of and within itself constitutes a threat of the required imminent harm." *Sosa*, 177 S.W.3d at 231 (quoting *Robinson v. State*, 596 S.W.2d 130, 133 n.7 (Tex. Crim. App. 1980)).

As discussed above, Cruz-Tovias and Oviedo both positively identified appellant as the person with the firearm who had robbed Cruz-Tovias. And Banuelos testified that she saw appellant approach them with a firearm. Windsor's testimony links the firearm recovered from the passenger side of the car, in which appellant was a passenger immediately following the robbery, as described in the testimony of Deputy Staner and Officer Morton, to the shell casing recovered by Detective Albin at the car wash. Oviedo also testified that appellant pointed his firearm at her and told her not to move while he was in the process of robbing Cruz-Tovias and that she was scared. And Cruz-Tovias and Oviedo both testified that appellant fired a shot from the firearm before fleeing the scene. "The act of pointing a loaded gun at someone, by itself, is threatening conduct that supports a conviction for aggravated assault." *Jones*, 500 S.W.3d at 113; *see also Robinson*, 596 S.W.2d at 133 n.7 ("[T]he display of a deadly weapon of and within itself constitutes a threat of the required imminent harm."); *Peterson v. State*, 574 S.W.2d 90, 92 (Tex. Crim. App. [Panel Op.] 1978) ("[I]mplicit in the allegation that a 'Deadly Weapon' was used to threaten the complainant is the possibility that the complainant was threatened with death as well as bodily injury."); *Boston v.*

*State*, 373 S.W.3d 832, 840 (Tex. App.—Austin 2012) ("The act of pointing a gun at an individual is, by itself, threatening conduct."), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013); *Sosa*, 177 S.W.3d at 231 ("[D]isplay of a deadly weapon while demanding money constitutes a threat of the required imminent harm.").

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have determined beyond a reasonable doubt that appellant committed the aggravated assault of Oviedo. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction for the offense of aggravated assault.

We overrule appellant's first issue.

**Law of Parties**

In his second issue, appellant argues that the trial court erred in instructing the jury, over his attorney's objection, on law of parties in its charge because the State's evidence concerned appellant's actions as a principal actor and not as only a party to the offenses.

A review of alleged jury-charge error is a two-step process. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2004); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we must determine whether error exists in the charge. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). Second, if there is error, the court must determine whether the error caused

14

sufficient harm to require reversal of the conviction. *Id.* When there is an objection to preserve the error, the appellate court will reverse if the defendant demonstrates that he suffered "some harm." *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2011). A person is "criminally responsible" for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (Vernon 2011). "In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999).

From our review of the record, the evidence presented at trial would support a jury verdict that the appellant is criminally responsible under the law of parties. At trial, appellant's counsel questioned witnesses as to whether appellant was the driver or passenger of the car in which he was found after the robbery. Testimony from three witnesses established that the passenger of the car is the person who,

15

while using a firearm, robbed Cruz-Tovias and assaulted Oviedo. The driver, however, drove the person with the firearm to the car wash, waited for him to take Cruz-Tovias's belongings, and then led law enforcement officers on a lengthy pursuit, at the end of which he attempted to flee on foot. "Courts have repeatedly upheld convictions under the law of parties when the evidence establishes that the defendant participated in the commission of the offense by driving the getaway vehicle." *Rodriguez v. State*, 521 S.W.3d 822, 828 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Accordingly, we hold that the trial court did not err in submitting the law-of-parties instruction to the jury.

However, we note that because there is, as previously discussed, sufficient evidence to support appellant's guilt as a principal actor, any error in submitting the parties instruction would have been harmless. *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986) ("Where the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of the parties is harmless."). "In other words," if "there was no evidence tending to show appellant's guilt as a party, the jury almost certainly did not rely upon the parties instruction in arriving at its verdict, but rather" would have "based the verdict on the evidence tending to show appellant's guilt as a principal actor." *Ladd*, 3 S.W.3d at 565.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Caughey.

Do not publish. Tex. R. App. P. 47.2(b).